IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| SPENCER NORMAN, KIEFER NORMAN, COURTNEY NORMAN, and HELEN S. NORMAN, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No.: 2:12-CV-04210-NKL |
| CAMDEN COUNTY, BRIAN D. FIENE, DWIGHT D. FRANKLIN, RICHARD B. DZIADOSZ, LARRY L. RUTHERFORD, and JAMEE L. WATSON, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## AFFIDAVIT OF JAMEE WATSON

State of Missouri          )
                           )
County of Camden           )

Jamee Watson, being duly sworn upon her oath, states that she has personal knowledge of the following facts:

1. I was hired as a deputy sheriff by Camden County on January 21, 2011.

2. I attended the police academy at the Law Enforcement Training Institute at the University of Missouri graduating on December 18, 2009 with 640 hours of police training.

3. I was licensed by the Missouri Department of Public Safety as a police officer in the State of Missouri on December 18, 2009 and was granted a Class A license.



Exhibit H

4. Prior to attending the Law Enforcement Training Institute at the University of Missouri, I received a bachelor's degree in criminal justice from Missouri Valley College in 2009.

5. At the Law Enforcement Training Institute, I received 40 hours of training as a First Responder to provide emergency care to sick and injured individuals.

6. At the Law Enforcement Training Institute, I received training in providing cardiopulmonary resuscitation for the health care provider.

7. Prior to working for the Camden County Sheriff's Department, I was employed by the City of Camdenton Police Department as a road patrol officer from April, 2010 until January 21, 2011.

8. I was hired by the Camden County Sheriff's Department as a road patrol deputy sheriff, whose duties included responding to calls for services, investigating crimes, traffic patrol, and enforcing the law in Camden County.

9. During my training at the police academy, I had training in arrest procedures, use of force, constitutional law, defensive tactics, handcuffing techniques, monitoring individuals in custody, and the law concerning the detention and arrest of individuals.

10. I had training at the police academy in defensive tactics, including pressure point control tactics, which included instruction on the use of force in making an arrest and how to properly apply handcuffs when making an arrest.

11. I have maintained my license with the Missouri Department of Public Safety by taking 48 hours of continuing law enforcement training every three years since I was hired as a deputy sheriff by the Camden County Sheriff's Department.

12. I received training to utilize a taser X-26 and M-26 on February 8, 2011.

13. Prior to October 4, 2011, I had received additional training in Pressure Point Control Tactics Tactical Handcuffing on July 21, 2011 which included training about the use of handcuffs in arresting an individual.

14. I had "Basic First Aid" training about providing medical care and aid to injured individuals on July 13, 2010.

15. I received training about monitoring individuals in custody for medical needs which included the First Responder training to provide emergency care to sick and injured individuals in 2009, cardio resuscitation (CPR) for the health care provider in 2009, and basic first aid in 2010.

16. I was trained in the First Responder and cardiopulmonary resuscitation (CPR) classes about the procedures for providing cardiopulmonary resuscitation to an individual who had stopped breathing.

17. I took constitutional law classes in 2009 which included, among other issues, training about the use of force to arrest individuals, arrest procedures, the use of a taser in arresting an individual, and the use of handcuffs in arresting an individual.

18. I attended training in the police academy, and from the date I graduated from the police academy in 2009 through practical classes and constitutional law classes, that taught me I could only use force to arrest individuals that was objectively reasonable and only the force which a reasonably prudent law enforcement officer would use under same or similar conditions considering the totality of the circumstances.

19. I had no complaints lodged against me during my employment with the Camden County Sheriff's Department for my use of force in making an arrest, improper or false arrest, the use of a taser in making an arrest, failure to monitor an individual in custody, for procedures utilized in handcuffing an individual, for causing injury to an

individual during an arrest, for failing to render first aid to an arrestee, or for procedures utilized to arrest an emotionally disturbed person prior to October 4, 2011.

20. I have never been a Defendant in a lawsuit alleging claims arising out of my duties and responsibilities as a law enforcement officer prior to this case.

21. I had read and reviewed the Camden County Sheriff's Office Policy Manual, including the policy on "Use of Force and Weapons" prior to October 4, 2011.

22. I was trained by the Camden County Sheriff's Department that any use of force to arrest an individual had to comply with the "Use of Force and Weapons" policy of the Camden County Sheriff's Department.

23. I had arrested in excess of 50 individuals prior to October 4, 2011.

24. I received in excess of 40 hours of police training from the date I graduated from the police academy until October 4, 2011.

25. I was trained that it was an acceptable handcuffing technique to place a knee in the middle of an individual's shoulder blades while in a prone position (facedown) on the ground to assist an officer in handcuffing the individual and to maintain control of the individual if the individual continued to resist and/or attempt to flee after being handcuffed.

26. At 4:22 a.m., Deputy Dziadosz and I were dispatched to the 911 call made by Jason Cramer at 258 Teer Drive, Linn Creek, Missouri.

27. I was dispatched to 258 Teer Drive in reference to a male subject attempting to break into a residence.

28. While en route to the location, I also read information about the incident posted by the dispatcher on my in-car computer including:

a. Guy on the front porch made his way in the house once saying he has to pee - middle aged;

b. Was beating on the door and RP answered, pushed past the RP, pushed him back out and he tried to fight the RP (Reporting Party);

c. Male subject shorts and shirt off;

d. Second to the last trailer on the right with an addition on it;

e. Is still trying to get into the house;

f. RP (Reporting Party) has four little kids in the house also;

g. Thinks that the male subject messed with the motion detector cause it's not working now; and

h. Blk Dodge Dakota, brownish Ford P/U.

29. I assumed that the individual was either intoxicated or under the influence of narcotics.

30. After removing the individual's wrist from underneath his body, I placed my right knee in between the individual's shoulder blades with my left knee on the ground so I would have additional leverage to pull his arm from underneath his body and put it behind his back.

31. Within 30-45 seconds, I was able to pull the individual's right arm far enough behind his back for Sgt. Fiene to handcuff the individual.

32. After being handcuffed, the individual continued to rock his body back and forth and attempted to stand so I kept my knee in the middle of the individual's shoulder blades to control the individual.

33. I kept my knee in the middle of the individual's shoulder blades to prevent the individual from standing and attempting to flee and to prevent the individual from potentially harming me, Sgt. Fiene, Deputy Dziadosz, or himself.

34. After two to three minutes, the individual relaxed and became calm and I immediately removed my knee.

35. Deputy Dziadosz and I remained with the male individual who had been handcuffed to observe him.

36. Deputy Dziadosz and I observed that the individual went to sleep and started making sounds like he was snoring.

37. During this time, Deputy Dziadosz and I observed that the individual was breathing and did not appear to be having problems breathing.

38. Deputy Dziadosz and I continued to observe the individual after he was moved to the short grass area and that the individual did not appear to have problems breathing.

39. Deputy Dziadosz and I observed that the individual continued to breathe after he was moved to the short grass area and that the individual did not appear to have problems breathing.

40. The individual could not be revived and was pronounced dead at 5:31 a.m.

41. I was interviewed by the Missouri Highway Patrol in the investigation.

42. I prepared a report concerning my interaction with Glenn David Norman and a Use of Force Report concerning the arrest of and my interaction with Glenn David Norman as required by the policies of the Camden County Sheriff's Department.

FURTHER, AFFIANT SAYETH NOT.

_____
JAMEE WATSON

STATE OF MISSOURI    )
                     ) SS.
COUNTY OF CAMDEN     )

Subscribed and sworn to before me this 5 day of December, 2013.

_Jennifer M Wilson_
Notary Public

My Commission Expires:

JENNIFER M. WILSON
Notary Public - Notary Seal
STATE OF MISSOURI
Camden County
Commission # 13408208
My Commission Expires: 3/10/2017