IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

SPENCER NORMAN, KIEFER NORMAN,    )
COURTNEY NORMAN, and              )
HELEN S. NORMAN,                  )
                                  )
     Plaintiffs,                 )
                                  )
v.                                )    Case No.:    2:12-CV-04210-NKL
                                  )
CAMDEN COUNTY, BRIAN D. FIENE,    )
DWIGHT D. FRANKLIN,               )
RICHARD B. DZIADOSZ,              )
LARRY L. RUTHERFORD, and          )
JAMEE L. WATSON,                  )
                                  )
     Defendants.                 )

## DEFENDANTS' REPLY TO PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' JOINT STATEMENT OF UNCONTROVERTED MATERIAL FACTS[1]

Defendants Camden County, Brian D. Fiene, Dwight D. Franklin, Richard B. Dziadosz, Larry L. Rutherford, and Jamee L. Watson (hereinafter collectively referred to as "Defendants"), pursuant to Fed.R.Civ.P. 56, W.D.L.R. 7.0, and W.D.L.R. 56.1, respectfully submit Defendants' Reply to Plaintiffs' Objections and Responses to Defendants' Joint Statement of Uncontroverted Material Facts and state as follows:

1.     Defendant Camden County, Missouri ("Camden County") is a First Class non-chartered county organized and existing pursuant to the laws of the State of Missouri. (Affidavit of Kris Franken, Presiding Commissioner of Camden County, attached as Ex. A and hereinafter referred to as "Franken Aff.").

---

[1] Plaintiffs' Objections and Responses to Defendants' Joint Statement of Uncontroverted Material Facts [Doc. No. 116-1] was filed as an "Addendum" to Plaintiffs' suggestions in opposition to Defendants' motion for summary judgment and Defendants have filed their reply as an Appendix to Defendants' Reply Suggestions in Support of Their Joint Motion for Summary Judgment.

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

2.     Defendant Dwight D. Franklin ("Sheriff Franklin") is the elected sheriff of Camden County, Missouri being first elected on January 1, 2009. (Deposition of Dwight Franklin, p. 13 LL 24-25, p. 14 LL 1-10 attached as Ex. B and hereinafter referred to as "Franklin Depo.").

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment

3.     Prior to being elected sheriff, Sheriff Franklin was a Missouri State Highway Patrolman for 29 years. (Franklin Depo., p. 15 LL 10-14).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment

4.     Sheriff Franklin was licensed by the Missouri Department of Public Safety as a police officer in the State of Missouri on December 7, 1979 and was granted a Class A license. (Affidavit of Dwight Franklin attached as Ex. C and hereinafter referred to as "Franklin Aff.").

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

5.     Sheriff Franklin is responsible for the operation of the Camden County Sheriff's Department and training provided to deputy sheriffs in the Camden County Sheriff's Department. (Franklin Depo., p. 30 LL 2-10).

RESPONSE: Admit.

6.     Sheriff Franklin is responsible for creating policies for the Camden County Sheriff's Department and implementing the policies for the Camden County Sheriff's

Department.  (Franklin Aff. ¶3).

RESPONSE:  Admit.

7.      Sheriff Franklin is the final policymaker for the Camden County Sheriff's Department.  (Franklin Aff. ¶4).

RESPONSE:  Admit.

8.      Sheriff Franklin hired Sgt. Brian Fiene, Deputy Richard Dziadosz, and Deputy Larry Rutherford as deputy sheriffs for Camden County, Missouri when he was elected sheriff on January 1, 2009.  (Franklin Aff. ¶5).\

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

9.      Sheriff Franklin hired Deputy Jamee Watson as a deputy sheriff for Camden County, Missouri on January 21, 2011.  (Franklin Aff. ¶6).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

10.      Sgt. Fiene, Deputy Dziadosz, Deputy Watson, and Deputy Rutherford, as Deputy Sheriffs of Camden County, had no authority to create or implement policy on behalf of Camden County (Franklin Aff. ¶7).

RESPONSE:  Deny. All officers had authority, and were instructed, to implement Camden County's policies. (Franklin Dep. 20-21; Rugen Dep. 24-25; Fiene Dep. 24-25; Dziadosz Dep. 43-44; Fiene Aff ¶ 28; Dziadosz Aff. ¶ 24; Watson Aff. ¶ 25.)

**REPLY:**

**Defendants admit that the officers had authority to implement Camden County's policies as claimed by Plaintiffs.  However, Plaintiffs have not denied that the Deputies had**

no authority to create policy on behalf of Camden County, so this fact should be deemed admitted for the purpose of the motion for summary judgment.

11.    Sheriff Franklin was not present at the arrest of Decedent Glenn David Norman or when Glenn David Norman died at or near the scene of the arrest. (Franklin Aff. ¶8).

RESPONSE: Admit.

12.    Sheriff Franklin did not participate in the arrest of Decedent Glenn David Norman in any manner. (Franklin Aff. ¶9).

RESPONSE: Deny. Sheriff Franklin is responsible for creating the policies that deputies implemented in the arrest of Mr. Norman. (D.'s Facts ¶ 6; Franklin Dep. 20-21; Rugen Dep. 24-25; Fiene Dep. 24-25; Dziadosz Dep. 43-44; Fiene Aff ¶ 28; Dziadosz Aff. ¶ 24; Watson Aff. ¶ 25.)

**REPLY:**

The purported dispute over this factual statement is based solely on the parties' conflicting interpretations of the phrase "participate in any manner." Defendants used the phrase to demonstrate that Sheriff Franklin did not *personally* or *physically* participate in any manner in the arrest of Norman (*i.e.* did not personally use any force against Norman, did not personally subdue Norman, did not personally handcuff Norman, etc...). Plaintiffs, however, interpreted the phrase "participate in any manner" to have a much broader and more abstract meaning. While there may be a conflict in the interpretation of that phrase, it is undisputed that Sheriff Franklin was not present during the arrest of Norman or when Norman died (Defendants' Statement of Uncontroverted Facts at ¶ 11) and, therefore, Sheriff Franklin obviously could not have personally or physically participated in the arrest of Norman. Plaintiffs' overly broad and abstract interpretation of the phrase

4

"participate in any manner" is pure semantics and it is insufficient to defeat Defendants' motion for summary judgment.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)(In order to defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.").

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2050, 250, 91 L.Ed.2d 202 (1986).  ("Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.")

13.     All deputy sheriffs of the Camden County Sheriff's Department are required to have a license issued by the Missouri Department of Public Safety to serve as a deputy sheriff of Camden County.  (Franklin Aff., ¶10).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

14.     All deputy sheriffs of the Camden County Sheriff's Department are required to maintain their license with the Missouri Department of Public Safety by attending 48 hours of continuing law enforcement education as required by the Missouri Department of Public Safety Peace Officer Standards and Training (POST) for each three-year reporting period.  (Franklin Aff., ¶11).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

15. Deputy sheriffs at the Camden County Sheriff's Department are required by POST to complete a minimum of four hours in legal studies, four hours in interpersonal prospectives, four hours of technical studies, and four hours in skill development with four hours of some type of firearm skill development training in each three-year reporting period. Officers must complete the additional 32 hours of training in each three-year reporting period from the areas of legal studies, interpersonal prospectives, technical studies, and skill development. Officers are required by POST to have three hours of racial profiling training in each three-year reporting period. (Franklin Aff., ¶12).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

16. Sergeant Brian Fiene, Deputy Richard Dziadosz, Deputy Jamee Watson, and Deputy Larry Rutherford were all licensed by the Missouri Department of Public Safety as police officers in the State of Missouri on October 4, 2011. (Franklin Aff., ¶13).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

17. Sergeant Brian Fiene, Deputy Richard Dziadosz, Deputy Jamee Watson, and Deputy Larry Rutherford attended training required by POST to maintain their license with the Missouri Department of Public Safety before October 4, 2011. (Franklin Aff., ¶14).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

18. Sheriff Franklin had no knowledge before October 4, 2011 that Sgt. Brian Fiene

had not taken the eight hours of training required to use a taser as required by the Use of Force and Weapons policy of the Camden County Sheriff's Department. (Franklin Aff., ¶15).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

19. Sheriff Franklin had no knowledge before October 4, 2011 that Sgt. Brian Fiene had not taken the recertification training to use a taser every two years as required by the Use of Force and Weapons policy of the Camden County Sheriff's Department. (Franklin Aff., ¶16).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

20. A true and correct copy of the Camden County Sheriff's Office Incident Report (Dispatch Log) for October 4, 2011 is attached hereto marked Ex. D. (Franklin Aff., ¶17).

RESPONSE: Admit.

21. Sergeant Brian Fiene ("Sgt. Fiene") was hired as a deputy sheriff by Camden County on September 23, 1997. (Affidavit of Brian Fiene attached as Ex. E and hereinafter referred to as "Fiene Aff.").

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

22. Sgt. Fiene attended the police academy at the St. Charles County Law Enforcement Training Center graduating on January 31, 1997 with 490 hours of police training. (Fiene Aff., ¶2).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

23. Sgt. Fiene was licensed by the Missouri Department of Public Safety as a police

officer in the State of Missouri on January 31, 1997 and was granted a Class A license. (Fiene Aff., ¶3).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

24.     During his training at the academy, Sgt. Fiene had training in arrest procedures, use of force, constitutional law, defensive tactics, handcuffing techniques, monitoring individuals in custody, and the law concerning the detention and arrest of individuals. (Fiene Aff., ¶4).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

25.     Sgt. Fiene had training at the police academy in defensive tactics, including pressure point control tactics, which included instruction on the use of force in making an arrest and how to properly apply handcuffs when making an arrest. (Fiene Aff., ¶5).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

26.     Sgt. Fiene began his career with the Camden County Sheriff's Department as a road patrol deputy sheriff, whose duties included responding to calls for service, investigating crimes, traffic patrol, and enforcing the law in Camden County, Missouri. (Fiene Aff., ¶6).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

27.     Sgt. Fiene received six hours of training to use an M-26 Taser in 2003 when the Camden County Sheriff's Department began utilizing tasers. (Fiene Aff., ¶7).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

28.     Sgt. Fiene was carrying an X-26 Taser on October 4, 2011, which was a Taser that operated and deployed in the same manner as an M-26 Taser. (Fiene Aff., ¶8).

RESPONSE: Admit for purposes of summary judgment only.

29.     The Taser is a conducted electrical weapon which is designed to produce and emit an electrical charge to control an individual causing Neuro Muscular Incapacitation.  (Affidavit of Jim Brashear attached hereto as Ex. F and hereinafter referred to as "Brashear Aff.")

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

30.     The Taser delivers an electrical charge to an individual through a metal barbed probe ("probes") fired from the device that attach themselves to an individual and are connected to the Taser by thin insulated copper clad steel wires. (Brashear Aff., ¶5).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

31.     When the Taser probes strike an individual, an electrical charge flows through the wires and disrupts the individual sensory and motor nervous system, which results in NMI (Neuro-muscular incapacitation). (Brashear Aff., ¶6).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

32.     When the cycle of the Taser is completed and the electrical charge stops flowing, the individual being tased regains control of his muscular system and body. (Brashear Aff., ¶7).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

33.     The Taser is also designed to be used in a "drive stun" mode. The user can touch

the individual with either a spent cartridge attached to the Taser or by removing the cartridge from the Taser. The Taser is pushed against an individual's body with the electrical charge being delivered through metal contact points from either the cartridge or the front bay area of the Taser. (Brashear Aff., ¶8).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

34.     The electrical charge from the Taser in the "drive stun" mode causes localized pain to the individual, affecting the sensory nervous system but does not incapacitate the individual. (Brashear Aff., ¶9).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

35.     Sgt. Fiene was trained that a taser could be deployed upon an individual when it was deemed reasonably and objectively necessary to control a non-compliant, dangerous or violent subject and/or an individual resisting arrest when deadly force did not appear to be justified and/or necessary. (Fiene Aff., ¶9).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

36.     Sgt. Fiene received in excess of 300 hours of additional police training from 1997 until October 4, 2011. (Fiene Aff., ¶10).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

37.     Sgt. Fiene has maintained his license with the Missouri Department of Public Safety by taking 48 hours of continuing law enforcement training every three years since he was

10

hired as a deputy sheriff by the Camden County Sheriff's Department. (Fiene Aff., ¶11).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

38. Sgt. Fiene was promoted to the rank of sergeant at the Camden County Sheriff's Department in 2005. (Fiene Aff., ¶12).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

39. As a sergeant, Fiene was assigned to supervise other road patrol deputy sheriffs on his shift. (Fiene Aff., ¶13).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

40. Generally, Sgt. Fiene was assigned three to four road patrol deputy sheriffs on a given shift to supervise. (Fiene Aff., ¶14).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

41. Sgt. Fiene also continued to engage in road patrol activities, responding to calls for services, investigating crimes, traffic patrol, and enforcing the law during his shifts while he was supervising other deputy sheriffs from 2005 until October 4, 2011. (Fiene Aff., ¶15).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

42. Sgt. Fiene has received training as a supervisor while he has been employed at the Camden County Sheriff's Department, including the Missouri Uniform Crime Reporting for Supervisors course in 2003, the NIMSIS-100 Introduction to the Incident Command System in

2006, and the NIMSIS-700 National Incident Management System in 2006. (Fiene Aff., ¶16).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no

relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

43.     Sgt. Fiene attended various constitutional law classes from 1997 until October 4,

2011 which included, among other issues training about the use of force to arrest individuals,

arrest procedures, the use of a taser in arresting an individual, and the use of handcuffs in

arresting an individual. (Fiene Aff., ¶17).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no

relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

44.     Sgt. Fiene received training in the academy, and after he graduated from the

academy on January 13, 1997, in pressure point control defensive tactics which included training

about the use of handcuffs in arresting an individual. (Fiene Aff., ¶18).

RESPONSE: Admit.

45.     Sgt. Fiene received training from January 13, 1997 until October 4, 2011 about

the use of force in making an arrest and arrest procedures which has included pressure point

control defensive tactics, use of force, and high risk warrant service. (Fiene Aff., ¶19).

RESPONSE: Admit.

46.     Sgt. Fiene received training about monitoring individuals in custody for medical

needs which included 14 hours of training in First Responder Training in Emergency Medical

Care in the academy in 1997, a Cardiopulmonary Resuscitation and Automated External

Defibrillator training in 2002, Adult/Child/Infant Cardiopulmonary Resuscitation training in

2005, and Cardiopulmonary Resuscitation for the Health Care Provider in 2009. (Fiene Aff.,

¶20).

RESPONSE:  Admit.

47.     Sgt. Fiene was trained in the First Responders and Cardiopulmonary Resuscitation (CPR) classes about the procedures for providing cardiopulmonary resuscitation to an individual who had stopped breathing.  (Fiene Aff., ¶21).

RESPONSE:  Admit.

48.     Sgt. Fiene attended training in the police academy, and from the date he graduated from the police academy in 1997 until October 4, 2011 through practical classes and constitutional law classes, that taught him he could only use force to arrest individuals that was objectively reasonable and only the force which a reasonably prudent law enforcement officer would use under same or similar conditions considering the totality of the circumstances.  (Fiene Aff., ¶22).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

49.     During his employment at Camden County, Sgt. Fiene has arrested at least 1,000 individuals.  (Fiene Aff., ¶23).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

50.     Sgt. Fiene had read and reviewed the Camden County Sheriff's Office Policy Manual, including the policy on "Use of Force and Weapons" prior to October 4, 2011.  (Fiene Aff., ¶24).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

51.     Sgt. Fiene was trained by the Camden County Sheriff's Department that any use

of force to arrest an individual had to comply with the "Use of Force and Weapons" policy of the Camden County Sheriff's Department. (Fiene Aff., ¶25).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

52. Sgt. Fiene had no complaints lodged against him during his employment with the Camden County Sheriff's Department for his use of force in making an arrest, improper or false arrest, his use of a taser in making an arrest, his failure to monitor an individual in custody, for causing injury to an individual during an arrest, for procedures utilized to handcuff an individual, for failing to render first aid to an arrestee, or for procedures utilized to arrest an emotionally disturbed person prior to October 4, 2011. (Fiene Aff., ¶26; Franklin Aff., ¶18).

> RESPONSE: Admit for purposes of summary judgment only however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

53. Sgt. Fiene has never been a Defendant in a lawsuit alleging claims arising out of his duties and responsibilities as a law enforcement officer prior to this case. (Fiene Aff., ¶27).

> RESPONSE: Admit for purposes of summary judgment only however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

54. Defendant Deputy Richard Dziadosz ("Deputy Dziadosz") was hired as a deputy sheriff by Camden County on June 4, 2007. (Affidavit of Richard Dziadosz attached as Ex. G and hereinafter referred to as "Dziadosz Aff.").

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

55. Deputy Dziadosz attended the police academy at the Missouri Sheriffs' Association graduating on June 7, 2007 with 640 hours of police training. (Dziadosz Aff., ¶2).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

56. Deputy Dziadosz was licensed by the Missouri Department of Public Safety as a police officer in the State of Missouri on June 7, 2007 and was granted a Class A license. (Dziadosz Aff., ¶3).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

57. Prior to becoming a deputy sheriff, Deputy Dziadosz worked as a correctional officer in the Camden County jail from 2004 until his commission as a deputy sheriff on June 7, 2007. (Dziadosz Aff., ¶4).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

58. During the time Deputy Dziadosz was a correctional officer, he received training at the Camden County Sheriff's Department to use a taser in 2004. (Dziadosz Aff., ¶5).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

59. Deputy Dziadosz was trained that a taser could be deployed on an individual when it was deemed reasonably and objectively necessary to control a non-compliant, dangerous or violent subject and/or an individual resisting arrest when deadly force did not appear to be justified and/or necessary. (Dziadosz Aff., ¶6).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

60. Deputy Dziadosz was hired by the Camden County Sheriff's Department as a

road patrol deputy sheriff, whose duties included responding to calls for services, investigating crimes, traffic patrol, and enforcing the law in Camden County. (Dziadosz Aff., ¶7).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

61.    During his training at the academy, Deputy Dziadosz had training in arrest procedures, use of force, constitutional law, defensive tactics, handcuffing techniques, monitoring individuals in custody, and the law concerning the detention and arrest of individuals. (Dziadosz Aff., ¶8).

RESPONSE: Admit.

62.    Deputy Dziadosz had training at the police academy in defensive tactics, including pressure point control tactics, which included instruction on the use of force in making an arrest and how to properly apply handcuffs when making an arrest. (Dziadosz Aff., ¶9).

RESPONSE: Admit.

63.    Deputy Dziadosz has maintained his license with the Missouri Department of Public Safety by taking 48 hours of continuing law enforcement training every three years since he was hired as a deputy sheriff by the Camden County Sheriff's Department. (Dziadosz Aff., ¶10).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

64.    Deputy Dziadosz took constitutional law classes in 2009 and 2010 which included, among other issues, training about the use of force to arrest individuals, arrest procedures, the use of a taser in arresting an individual, and the use of handcuffs in arresting an individual. (Dziadosz Aff., ¶11).

RESPONSE: Admit.

65. Deputy Dziadosz received training about monitoring individuals in custody for medical needs which included 40 hours of First Responder Training in Emergency Medical Care in the police academy in 2007, a Cardiopulmonary Resuscitation (CPR) for the Health Care Provider in 2009, and a Cardiopulmonary Resuscitation (CPR) for the Health Care Provider in 2011. (Dziadosz Aff., ¶12).

RESPONSE: Admit.

66. Deputy Dziadosz was trained in the First Responder and Cardiopulmonary Resuscitation (CPR) classes about the procedures for providing cardiopulmonary resuscitation to an individual who had stopped breathing. (Dziadosz Aff., ¶13).

RESPONSE: Admit.

67. Deputy Dziadosz took a course in October, 2007 about "The Mentally Ill Person" which trained him to recognize individuals who were mentally ill and/or emotionally disturbed and that individuals who were mentally ill and/or emotionally disturbed should be immediately taken into custody to protect the safety of the individual, the police officer, and the public. (Dziadosz Aff., ¶14).

RESPONSE: Admit.

68. Prior to October 4, 2011, Deputy Dziadosz had received additional training in Cardiopulmonary Resuscitation for Health Care Providers in 2009 and 2011. (Dziadosz Aff., ¶15).

RESPONSE: Admit.

69. Prior to October 4, 2011, Deputy Dziadosz received additional training in Pressure Point Control Tactics Tactical Handcuffing on July 19, 2011 which included training

about the use of handcuffs in arresting an individual.  (Dziadosz Aff., ¶16).

RESPONSE:  Admit.

70.     Deputy Dziadosz attended training in the police academy, and from the date he graduated from the police academy in 2007 through practical classes and constitutional law classes, that taught him he could only use force to arrest individuals that was objectively reasonable and only the force which a reasonably prudent law enforcement officer would use under same or similar conditions considering the totality of the circumstances.  (Dziadosz Aff., ¶17).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

71.     Deputy Dziadosz received in excess of 100 hours of additional police training from his date of graduation from the police academy until October 4, 2011.  (Dziadosz Aff., ¶18).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

72.     During his employment at Camden County, Deputy Dziadosz has arrested at least 300 individuals.  (Dziadosz Aff., ¶19).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

73.     Deputy Dziadosz had read and reviewed the Camden County Sheriff's Office Policy Manual, including the policy on "Use of Force and Weapons" prior to October 4, 2011.  (Dziadosz Aff., ¶20).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no

relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

74.     Deputy Dziadosz was trained by the Camden County Sheriff's Department that any use of force to arrest an individual had to comply with the "Use of Force and Weapons" policy of the Camden County Sheriff's Department.  (Dziadosz Aff., ¶21).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

75.     Deputy Dziadosz had no complaints lodged against him during his employment with the Camden County Sheriff's Department for his use of force in making an arrest, improper or false arrest, the use of a taser in making an arrest, failure to monitor an individual in custody, for procedures utilized for handcuffing an individual, for causing injury to an individual during an arrest, for failing to render first aid to an arrestee, or for procedures utilized to arrest an emotionally disturbed person prior to October 4, 2011.  (Dziadosz Aff., ¶22; Franklin Aff., ¶19).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

76.     Deputy Dziadosz has never been a Defendant in a lawsuit alleging claims arising out of his duties and responsibilities as a law enforcement officer prior to this case.  (Dziadosz Aff., ¶23).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

77.     Defendant Deputy Jamee Watson (Rugen) ("Deputy Watson") was hired as a deputy sheriff by Camden County on January 21, 2011.  (Affidavit of Jamee Watson attached as Ex. H and hereinafter referred to as "Watson Aff.").

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no

relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

78.     Deputy Watson attended the police academy at the Law Enforcement Training Institute at the University of Missouri graduating on December 18, 2009 with 640 hours of police training.  (Watson Aff., ¶2).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

79.     Deputy Watson was licensed by the Missouri Department of Public Safety as a police officer in the State of Missouri on December 18, 2009 and was granted a Class A license. (Watson Aff., ¶3).

RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

80.     Prior to attending the Law Enforcement Training Institute at the University of Missouri, Deputy Watson received a bachelor's degree in criminal justice from Missouri Valley College in 2009.  (Watson Aff., ¶4).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

81.     At the Law Enforcement Training Institute, Deputy Watson received 40 hours of training as a First Responder to provide emergency care to sick and injured individuals.  (Watson Aff., ¶5).

RESPONSE:  Admit.

82.     At the Law Enforcement Training Institute, Deputy Watson received training in providing cardiopulmonary resuscitation for the health care provider.  (Watson Aff., ¶6).

RESPONSE:  Admit.

83.     Prior to working for the Camden County Sheriff's Department, Deputy Watson was employed by the City of Camdenton Police Department as a road patrol officer from April, 2010 until January 21, 2011.  (Watson Aff., ¶7).

> RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

84.     Deputy Watson was hired by the Camden County Sheriff's Department as a road patrol deputy sheriff, whose duties included responding to calls for services, investigating crimes, traffic patrol, and enforcing the law in Camden County.  (Watson Aff., ¶8).

> RESPONSE:  Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

85.     During her training at the police academy, Deputy Watson had training in arrest procedures, use of force, constitutional law, defensive tactics, handcuffing techniques, monitoring individuals in custody, and the law concerning the detention and arrest of individuals. (Watson Aff., ¶9).

> RESPONSE:  Admit.

86.     Deputy Watson had training at the police academy in defensive tactics, including pressure point control tactics, which included instruction on the use of force in making an arrest and how to properly apply handcuffs when making an arrest.  (Watson Aff., ¶10).

> RESPONSE:  Admit.

87.     Deputy Watson has maintained her license with the Missouri Department of Public Safety by taking 48 hours of continuing law enforcement training every three years since she was hired as a deputy sheriff by the Camden County Sheriff's Department.  (Watson Aff., ¶11).

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

88.     Deputy Watson received training to utilize a taser X-26 and M-26 on February 8, 2011. (Watson Aff., ¶12).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

89.     Prior to October 4, 2011, Deputy Watson had received additional training in Pressure Point Control Tactics Tactical Handcuffing on July 21, 2011 which included training about the use of handcuffs in arresting an individual. (Watson Aff., ¶13).

RESPONSE: Admit.

90.     Deputy Watson had "Basic First Aid" training about providing medical care and aid to injured individuals on July 13, 2010. (Watson Aff., ¶14).

RESPONSE: Admit.

91.     Deputy Watson received training about monitoring individuals in custody for medical needs which included the First Responder training to provide emergency care to sick and injured individuals in 2009, cardio resuscitation (CPR) for the health care provider in 2009, and basic first aid in 2010. (Watson Aff., ¶15).

RESPONSE: Admit.

92.     Deputy Watson was trained in the First Responder and cardiopulmonary resuscitation (CPR) classes about the procedures for providing cardiopulmonary resuscitation to an individual who had stopped breathing. (Watson Aff., ¶16).

RESPONSE: Admit.

93.     Deputy Watson took constitutional law classes in 2009 which included, among

other issues, training about the use of force to arrest individuals, arrest procedures, the use of a taser in arresting an individual, and the use of handcuffs in arresting an individual. (Watson Aff., ¶17).

RESPONSE: Admit.

94.     Deputy Watson attended training in the police academy, and from the date she graduated from the police academy in 2009 through practical classes and constitutional law classes, that taught her she could only use force to arrest individuals that was objectively reasonable and only the force which a reasonably prudent law enforcement officer would use under same or similar conditions considering the totality of the circumstances. (Watson Aff., ¶18).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

95.     Deputy Watson had no complaints lodged against her during her employment with the Camden County Sheriff's Department for her use of force in making an arrest, improper or false arrest, the use of a taser in making an arrest, failure to monitor an individual in custody, for procedures utilized in handcuffing an individual, for causing injury to an individual during an arrest, for failing to render first aid to an arrestee, or for procedures utilized to arrest an emotionally disturbed person prior to October 4, 2011. (Watson Aff., ¶19; Franklin Aff., ¶20).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

96.     Deputy Watson has never been a Defendant in a lawsuit alleging claims arising out of her duties and responsibilities as a law enforcement officer prior to this case. (Watson Aff., ¶20).

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

97.     Deputy Watson had read and reviewed the Camden County Sheriff's Office Policy Manual, including the policy on "Use of Force and Weapons" prior to October 4, 2011. (Watson Aff., ¶21).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

98.     Deputy Watson was trained by the Camden County Sheriff's Department that any use of force to arrest an individual had to comply with the "Use of Force and Weapons" policy of the Camden County Sheriff's Department.  (Watson Aff., ¶22).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

99.     Deputy Watson had arrested in excess of 50 individuals prior to October 4, 2011. (Watson Aff., ¶23).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

100.     Deputy Watson received in excess of 40 hours of police training from the date she graduated from the police academy until October 4, 2011.  (Watson Aff., ¶24).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

101.     Defendant Deputy Larry Rutherford ("Deputy Rutherford") was hired as a deputy sheriff by Camden County, Missouri on June 8, 2006.  (Affidavit of Larry Rutherford attached as Ex. I and hereinafter referred to as "Rutherford Aff.").

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

102.     Deputy Rutherford attended the police academy at the Missouri Sheriffs' Association Training Academy graduating on June 8, 2006 with 640 hours of police training. (Rutherford Aff., ¶2).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

103.     Deputy Rutherford was licensed by the Missouri Department of Public Safety as a police officer in the State of Missouri on June 8, 2006 and was granted a Class A license. (Rutherford Aff., ¶3).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

104.     Deputy Rutherford received 40 hours of training as a First Responder to provide medical care and treatment to the sick and injured during his training at the Missouri Sheriffs' Association Training Academy.  (Rutherford Aff., ¶4).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

105.     During his training at the academy, Deputy Rutherford had training in arrest procedures, use of force, constitutional law, defensive tactics, handcuffing techniques, monitoring individuals in custody, and the law concerning the detention and arrest of individuals. (Rutherford Aff., ¶5).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

106.    Deputy Rutherford had training at the police academy in defensive tactics, including pressure point control tactics, which included instruction on the use of force to arrest an individual and how to properly apply handcuffs when making an arrest.  (Rutherford Aff., ¶6).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

107.    Deputy Rutherford received training for cardiopulmonary resuscitation and using an automated external defibrillator during his training at the Missouri Sheriffs' Association Training Academy.  (Rutherford Aff., ¶7).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

108.    Deputy Rutherford received additional training in cardiopulmonary resuscitation for the health care provider in 2009 and in June, 2011.  (Rutherford Aff., ¶8).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

109.    Deputy Rutherford received additional training in Pressure Point Control Tactics Tactical Handcuffing on July 19, 2011 which included training about the use of handcuffs in making an arrest.  (Rutherford Aff., ¶9).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

110.    Deputy Rutherford received 40 hours of training in high risk warrant service which included training in arrest procedures and use of force in making arrests in 2008. (Rutherford Aff., ¶10).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no

relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

111.    Deputy Rutherford attended constitutional law classes in 2009 and 2010 which included, among other issues, training about the use of force to arrest individuals, arrest procedures, the use of a taser in arresting an individual, and the use of handcuffs in arresting an individual. (Rutherford Aff., ¶11).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no
>
> relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

112.    Deputy Rutherford attended training in the police academy, and from the date he graduated from the police academy in 2006 through practical classes and constitutional law classes, that taught him he could only use force to arrest individuals that was objectively reasonable and only the force which a reasonably prudent law enforcement officer would use under same or similar conditions considering the totality of the circumstances. (Rutherford Aff., ¶12).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no
>
> relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

113.    Deputy Rutherford received in excess of 180 hours of police training from June 8, 2006 until October 4, 2011. (Rutherford Aff., ¶13).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no
>
> relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

114.    Deputy Rutherford received training about monitoring individuals in custody for medical needs which included 40 hours of First Responder training in emergency medical care in the academy, cardiopulmonary resuscitation and using an automated external defibrillator in the academy, cardiopulmonary resuscitation in 2009, and cardiopulmonary resuscitation in June,

2011. (Rutherford Aff., ¶14).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

115.  Deputy Rutherford was trained in the First Responder and cardiopulmonary resuscitation (CPR) classes about the procedures for providing cardiopulmonary resuscitation to an individual who had stopped breathing.  (Rutherford Aff., ¶15).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

116.  Deputy Rutherford had no complaints lodged against him during his employment with the Camden County Sheriff's Department for his use of force in making arrests, improper or false arrest, the use of a taser in making an arrest, failure to monitor an individual in custody, for procedures utilized to handcuff an individual, for causing injury to an individual during an arrest, for failing to render first aid to an arrestee, or for procedures utilized to arrest an emotionally disturbed person prior to October 4, 2011.  (Rutherford Aff., ¶16; Franklin Aff., ¶21).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

117.  Deputy Rutherford has never been named as a Defendant in a lawsuit alleging claims about his duties and responsibilities as a law enforcement officer prior to this case. (Rutherford Aff., ¶17).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

118.  Deputy Rutherford had arrested in excess of 400 individuals prior to October 4, 2011.  (Rutherford Aff., ¶18).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

119.    Deputy Rutherford had read and reviewed the Camden County Sheriff's Office Policy Manual, including the policy on "Use of Force and Weapons" prior to October 4, 2011. (Rutherford Aff., ¶19).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

120.    Deputy Rutherford was trained by the Camden County Sheriff's Department that any use of force to arrest an individual had to comply with the "Use of Force and Weapons" policy of the Camden County Sheriff's Department.  (Rutherford Aff., ¶20).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

121.    The Camden County Sheriff's Office Policy Manual contained a policy regulating the "Use of Force and Weapons" in Chapter 8 on October 4, 2011 which is attached as Ex. J. (Franklin Aff., ¶22).

RESPONSE: Admit.

122.    The purpose of the "Use of Force and Weapons" policy was to provide deputies guidelines for the use of force upon individuals deputies would encounter.  (Franklin Aff., ¶23).

RESPONSE: Admit.

123.    Specifically, the use of force policy provided:

"It is the policy of the Camden County Sheriff's Office that a deputy uses only the force that reasonably appears necessary to effectively bring an incident under control, while protecting the lives of the deputy and the public.  It must be stressed that the use of force is not left to the unfettered discretion of the involved deputy.  This is not a subjective determination. The use of force must be objectively reasonable.  The deputy must only

use that force which a reasonably prudent law enforcement officer would use under the same or similar conditions, considering the totality of the circumstances. At no time is force to be used as punishment."

(Franklin Aff., ¶24; Ex. J).

RESPONSE: Admit.

124. Further, the use of force policy defines non-deadly force and objectively reasonable as follows:

Non-deadly force: Any use of force other than that which is considered deadly force. This includes any physical effort to control or restrain another, or to overcome the resistance of another.

Objectively reasonable: This term means that, in determining the necessity for force and the appropriate level of force, officers shall evaluate each situation in light of the known circumstances, including, but not limited to the seriousness of the crime, the level of threat or resistance presented by the subject, and the level of threat to the community.

(Franklin Aff., ¶25; Ex. J).

RESPONSE: Admit.

125. Specifically, the use of force policy provides that deputies may use non-deadly force in the following circumstances:

1. Where deadly force is not authorized, officers may use only that level of force that is objectively reasonable to bring an incident under control.

2. Deputies are authorized to use department-approved, non-deadly force techniques and issued equipment in order to:

a. Protect the deputy or others from physical harm;

b. Restrain or subdue a resistant individual; and/or

c. Bring an unlawful situation safely and effectively under control.

(Franklin Aff., ¶26; Ex. J).

RESPONSE: Admit.

126. The use of force policy lists various "force options" for deputy sheriffs including:

> For control of a subject, there are several options available. The options listed here are not all inclusive. Police canine (bite), handheld impact weapons (baton or blunt instrument), electronic weapons (handheld shock devices, taser, etc.), physical control holds, chemical weapons (O/C pepper spray, C/S spray, C/N spray). These options are calculated to control and/or overcome the subject where there is no expectation of great bodily injury or death.

(Franklin Aff., ¶27; Ex. J).

RESPONSE: Admit.

127. The use of force policy requires all use of physical force, impact weapons, and electronic devices to be reported in a written report to be reviewed by a department head and the chief deputy. (Franklin Aff., ¶28; Ex. J).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

128. The use of force and weapons policy also contains a section relating to "taser handling and deployment." (Franklin Aff., ¶29; Ex. J).

RESPONSE: Admit.

129. The taser handling and deployment policy sets forth the Camden County Sheriff's Department's policy regarding the training required to use a taser and the handling and deployment of the taser. (Franklin Aff., ¶30; Ex. J).

RESPONSE: Admit.

130. The taser policy provides that a taser is an additional police tool and is not intended to replace verbal problem-solving skills, ASP, O/C spray or firearms, that the taser can be deployed where it is deemed reasonably necessary to control a non-compliant, dangerous or violent subject when deadly force does not appear to be justified and/or necessary, and that the taser will be placed at the same level as O/C spray on the force continuum. (Franklin Aff., ¶31; Ex. J).

RESPONSE: Admit.

131.    The policy defines a taser as the M-26 Advanced Taser, the X-26 Taser, and any department authorized and issued non-lethal device which is designed to produce and emit an electrical charge. (Franklin Aff., ¶32; Ex. J).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

132.    The taser policy requires that each deputy utilizing a taser must take an eight-hour course on the use of an M-26/X-26 Taser from the department's taser training instructor or a taser training program from TASER International. (Franklin Aff., ¶33; Ex. J).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

133.    The taser policy also requires where possible that warnings be used announcing "taser" to alert other officers, as well as to provide the subject an additional opportunity to cease the conduct that has given rise to the deployment of the taser. (Franklin Aff., ¶34; Ex. J).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

134.    The taser policy also provides that when an officer approaches a subject with the intent to deploy a taser that an additional officer should also approach whenever possible to provide lethal cover should it become necessary for the protection of life and that verbal commands should be used constantly before (whenever practical), during, and after deployment of the taser to warn the subject to cease his/her aggressive demeanor or action. (Franklin Aff., ¶35; Ex. J).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no

relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

135.    The taser policy also requires that the department's taser control manager ensure that basic certification in the use of a taser by a deputy and biennial (every two years) recertification training on the taser as needed.  (Franklin Aff., ¶36; Ex. J).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

136.    The Camden County Sheriff's Department also had an "unwritten policy" that allowed deputies to place a knee in the back of an individual handcuffed in a prone position on the ground to restrain the individual on the ground if the individual was continuing to resist arrest by struggling or attempting to stand to flee to protect the deputy and the individual.  (Franklin Aff., ¶37).

RESPONSE: Admit.

137.    Sgt. Fiene, Deputy Dziadosz, and Deputy Watson were trained that it was an acceptable handcuffing technique to place a knee in the middle of an individual's shoulder blades while in a prone position (facedown) on the ground to assist an officer in handcuffing the individual and to maintain control of the individual if the individual continued to resist and/or attempted to flee after being handcuffed.  (Fiene Aff., ¶28; Dziadosz Aff., ¶24; Watson Aff., ¶25).

RESPONSE: Admit.

138.    Deputies of Camden County frequently respond to calls involving emotionally disturbed persons which are individuals acting abnormally due to mental illness, intoxication, and/or the use of drugs (Franklin Aff., ¶38).

RESPONSE: Admit.

139.    On October 4, 2011, Jason Cramer and his significant other Amber Smith, along with their four children resided at 258 Teer Drive, Linn Creek, Missouri.  (Deposition of Jason Cramer, p. 12 LL 14-25, p. 14 LL 17-25 attached as Ex. K and hereinafter referred to as "Cramer Depo.").

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

140.    At approximately 4:00 a.m. on the morning of October 4, 2011, Jason Cramer was sleeping in his home, along with his significant other Amber Smith and his four children when he was awaken by an individual yelling and screaming and banging on his front door.  (Cramer Depo., p. 16 LL 17-25, p. 17 LL 1-24).

RESPONSE: Admit.

141.    Mr. Cramer, believing somebody might be in trouble or hurt, went to his front door and opened the door to offer assistance.  (Id., p. 19 LL 1-15).

RESPONSE: Admit.

142.    When Mr. Cramer opened the door, the individual barged through the front door and came into his house.  (Id., p. 19 LL 16-22).

RESPONSE: Admit.

143.    The individual was speaking and talking, but Mr. Cramer could not decipher what he was saying.  (Cramer Depo., p. 20 LL 11-14).  Mr. Cramer did hear the individual say that he needed to "pee."  (Id., p. 70, LL 1-20).

RESPONSE: Admit.

144.    The individual was wearing a pair of shorts and no shirt.  (Id., p. 20 LL 19-25).

RESPONSE: Admit that Mr. Norman was only wearing a pair of boxer

shorts and nothing else. (Dziadosz Dep. 58.)

**REPLY:**

**Plaintiffs' qualified admission fails to specifically controvert the factual statement set forth above in ¶144 and, therefore, the statement of fact set forth in paragraph 144 should be deemed admitted. See Evans v. City of Lake Ozark, Mo., 2:08-CV-04085-NKL, 2009 WL 2408381 (W.D. Mo. Aug. 5, 2009)("Under Local Rule 56. 1, all statements of undisputed material fact set out in a motion for summary judgment not specifically controverted by the non-movant are deemed admitted.").**

**To the extent that it is deemed that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

145.    The individual started waving his arms around and then pushed Mr. Cramer in the front room of his house.  (Id., p. 21 LL 11-20).

RESPONSE: Deny. The source cited does not support this assertion. In his deposition, Mr. Cramer stated Mr. Norman was "trying to get in further" and that Mr. Norman "*tried* to push me back to get into my house further." (Cramer Dep. 21-22.) This testimony does not establish Mr. Norman pushed Mr. Cramer in the front room of his house.

**REPLY:**

**The testimony cited by Defendants is as follows:**

>    **Q.    So when this individual came into your house, did you try to talk to him?**

> **A.** I did at first, and when I didn't get no response, I—he just started waving his arms around and barging and pushing his way in further, trying to get in further. And that's when I took it upon myself to kick him out of my home.
>
> **Q.** So did this individual lay his hands upon you and push you in your house?
>
> **A.** *He did push me.* He tried to push me back to try to get into my house further, and that's when I grabbed him. (emphasis added)

The cited testimony unequivocally states that Norman pushed Cramer while inside of Cramer's house. Cramer then testified that the individual also "tried" to push Cramer back even further in order to get further inside of Cramer's house. Plaintiffs' attempt to manufacture a factual dispute by selectively quoting portions of the testimony cited by Defendants and ignoring other portions of the cited testimony that unequivocally supports the factual statement contained in ¶145 is insufficient to demonstrate the existence of a genuine issue of material fact. Furthermore, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 145 and, therefore, the factual statement set forth above in paragraph 145 should be deemed admitted. See Evans v. City of Lake Ozark, Mo., 2:08-CV-04085-NKL, 2009 WL 2408381 (W.D. Mo. Aug. 5, 2009)("Under Local Rule 56. 1, all statements of undisputed material fact set out in a motion for summary judgment not specifically controverted by the non-movant are deemed admitted. Thus, where a party has denied a fact without setting out specific facts showing a genuine issue for trial, those facts have been deemed admitted.").

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

**liability under §1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

146.    Mr. Cramer grabbed the individual by the throat in an attempt to get him out of the house with the individual still attempting to push Mr. Cramer back into his house. (Id., p. 21 LL 16-25, p. 22 LL 1-14).

RESPONSE: Admit.

147.    Mr. Cramer grabbed the individual tighter and got the front door open enough so that he could force the individual out on the porch of the home. (Id., p. 22 LL 18-22). Mr. Cramer let go of the individual on the front porch, but the individual persisted in trying to reenter the house. (Id., p. 22 LL 18-25, p. 23 LL 1-3).

RESPONSE: Admit.

148.    At this time, Mr. Cramer was afraid for his family and believed the individual was a threat to his family by entering his home at 4:00 a.m. (Id., p. 23 LL 9-16).

RESPONSE: Deny. Mr. Cramer also testified that there was "something wrong" with Mr. Norman, that "he needed help." (Cramer Dep. 30-31.) Mr. Cramer also agreed that Mr. Norman never broke into his house (Id. at 98) and agreed Mr. Norman might need medical help (Id. at 93-94.)

**REPLY:**

**The testimony cited by Defendants is as follows:**

> **Q.      And when this individual was trying to push into your house and get into your house what was your general feeling?  Were you afraid?**
>
> **A.      I was afraid for my family.**
>
> **Q.      Did you believe that this individual was a threat to your family?**
>
> **A.      I did.  At four o'clock in the morning and – yeah I did.**

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

The testimony cited by Defendants clearly demonstrates that Cramer testified that he was afraid for his family and that he believed that the individual was a threat to his family given that it was 4:00 a.m. Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 148 and, instead, merely attempts to set forth additional facts regarding Cramer's interaction with Norman. Accordingly, Defendants' factual statement set forth above in paragraph 148 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

149. Mr. Cramer had never seen the individual before this morning. (Id., p. 23 LL 22-25).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

150. Mr. Cramer attempted to talk to the individual to calm him down and asked him to explain to him what was wrong or what he needed, but Mr. Cramer could not understand anything the individual said. (Id., p. 24 LL 8-20).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

151. The individual started waving his arms again and walking toward Mr. Cramer with Mr. Cramer taking the actions as a threat so he grabbed a hold of the individual with both of

his arms in a bear hug and jumped off the porch with the individual.  (Cramer Depo., p. 25 LL 11-25, p. 26 LL 1-11).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

152.    The individual fell from the porch and landed on his back with Mr. Cramer on top of him.  (Id., p. 26 LL 17-25, p. 27 L 1).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

153.    Mr. Cramer immediately got up and walked back on his porch with the individual also getting off the ground and walking up the steps to the porch.  (Id., p. 27 LL 2-10). Mr. Cramer decided that he was not going to allow the individual to walk back on his porch.  (Id. p. 27 LL 16-20).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

154.    Mr. Cramer then instructed the individual to leave before he got hurt with the individual waving his arms around and doubling up his fists.  (Id., p. 28 LL 1-13).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

155.    Mr. Cramer then hit the individual in the jaw and the individual fell off the porch. (Id., p. 28 LL 8-15).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

156.    Mr. Cramer's punch knocked the individual down with him falling to the ground.

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

(Id., p. 28 LL 20-25, p. 29 L 1).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

157.   Mr. Cramer immediately turned around and went into his house, locking the door and calling 911.  (Id., p. 29 LL 9-13).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

158.   Mr. Cramer believed that the individual was a threat to him and his family and was a threat to his and his family's safety.  (Id., p. 30 L 25, p. 31 LL 1-7).

RESPONSE: Deny. Mr. Cramer also testified that there was "something wrong" with Mr. Norman, that "he needed help." (Cramer Dep. 30-31.) Mr. Cramer also agreed that Mr. Norman never broke into his house (Id. at 98) and agreed Mr. Norman might need medical help (Id. at 93-94.)

**REPLY:**

**The testimony cited by Defendants is as follows:**

> **Q.     All right.  Did you feel at that point in time that this individual was a threat to you and your family?**
>
> **A.     At the time he was there, yes.**
>
> **Q.     Did you believe that this individual was a threat to your family and your family's safety at that point in time?**
>
> **A.     Yes, I did.**

**The testimony cited by Defendants clearly demonstrates that Cramer testified that he believed that the individual was a threat to him and his family and that he believed that the individual was a threat to his and his family's safety.  Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in**

paragraph 158 and, instead, merely attempts to set forth additional facts regarding Cramer's interaction with Norman. Accordingly, Defendants' factual statement set forth above in paragraph 158 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

159. While Mr. Cramer dialed 911, the individual came back on his porch beating on the door a couple of times and turning the knob on the front door. (Id., p. 31 LL 15-25, p. 32 LL 1-18).

RESPONSE: Admit.

160. Mr. Cramer reported to the 911 operator that an individual had made his way into his house one time and that the individual was still beating on his door and trying to come into his house. (Cramer Depo., p. 35 LL 18-21, p. 37 LL 1-4).

RESPONSE: Admit.

161. At 4:22 a.m., Deputy Dziadosz and Deputy Watson were dispatched to the 911 call made by Jason Cramer at 258 Teer Drive, Linn Creek, Missouri. (Dziadosz Aff., ¶25; Watson Aff., ¶26).

RESPONSE: Admit.

162. Mr. Cramer's home at 258 Teer Drive was located in the country approximately eight miles from the City of Camdenton, Missouri. (Dziadosz Aff., ¶26).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no

relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

163.     The temperature on October 4, 2011 was 40 degrees or less. (Fiene Aff., ¶29).

RESPONSE: Admit.

164.     Deputy Dziadosz was dispatched by the Camden County Communication Center for a burglary in progress at 258 Teer Drive, Linn Creek, Missouri.  (Dziadosz Aff., ¶27).  While en route to the location, Deputy Dziadosz read on his in-car computer that a male had gained entry into a house, that the reporting party was able to get him out of the residence, that the male was still on the front porch banging on the door, and that the individual was a male subject in shorts with no shirt.  (Id.).

RESPONSE: Deny. This was not a burglary in progress. It is clear from the Dispatch Log that the Deputies knew Norman was an emotionally disturbed person, not a burglar. (Dispatch Log.)

**REPLY:**

**Plaintiffs failed to support their denial with admissible evidence.  Instead, their denial consists of Plaintiffs' attorney's interpretation of the facts and the information contained in the Dispatch Log (Defendants' Exhibit D), which does not state that Norman was an emotionally disturbed person.  Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth in paragraph 164 and, therefore, the factual statement set forth in paragraph 164 should be deemed admitted.  See Postscript Enterprises v. City of Bridgeton, 905 F.2d 223, 226 (8th Cir. 1990)(citations omitted)(Statements from a party's attorney regarding the attorney's interpretations or conclusions regarding the facts in a case do not comply with Rule 56(e) and are insufficient to defeat a properly supported motion for summary judgment.);**

**Duluth News-Tribune, A Div. of Northwest Publications, Inc. v. Mesabi Pub. Co.**, 84 F.3d 1093, 1098 (8th Cir. 1996)(Allegations that are not are supported by admissible evidence should not be considered by the court in ruling on a motion for summary judgment.); **Evans**, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See **Anderson**, 477 U.S. at 248.

165.    Deputy Watson was dispatched to 258 Teer Drive in reference to a male subject attempting to break into a residence.  (Watson Aff., ¶27).

RESPONSE: Deny. Norman was not attempting to break into the residence. It is clear from the Dispatch Log that the Deputies knew Norman was an emotionally disturbed person, not a burglar. (Dispatch Log.)

**REPLY:**

Plaintiffs failed to support their denial with admissible evidence.  Instead, their denial consists of Plaintiffs' attorney's interpretation of the facts and the information contained in the Dispatch Log (Defendants' Exhibit D), which does not state that Norman was an emotionally disturbed person.  Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth in paragraph 165 and, therefore, the factual statement set forth in paragraph 165 should be deemed admitted.  See **Postscript Enterprises**, 905 F.2d at 226; **Duluth News-Tribune, A Div. of Northwest Publications, Inc.**, 84 F.3d at 1098; **Evans**, 2009 WL 2408381.

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

166.    Deputy Dziadosz arrived at 258 Teer Drive at 4:33:18 a.m. (Dispatch Log of the Camden County Sheriff's Department attached as Ex. D).

RESPONSE: Admit.

167.    Sgt. Fiene, the supervisor of the shift, overheard the dispatch to Deputy Dziadosz and Deputy Watson on a call of a male subject who had forced his way into a residence with the homeowner struggling and fighting with the suspect to get him out of the house, but the suspect was still beating on the door trying to get inside. (Deposition of Brian Fiene, p. 31 LL 6-14 attached as Ex. L and hereinafter referred to as "Fiene Depo."). Sgt. Fiene confirmed to dispatch that he would also respond to the call. (Fiene Aff., ¶30).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

168.    While en route to the location, Deputy Dziadosz and Deputy Watson also read information about the incident posted by the dispatcher on their in-car computers including:

  a.      Guy on the front porch made his way in the house once saying he has to pee - middle aged;

  b.      Was beating on the door and RP answered, pushed past the RP, pushed him back out and he tried to fight the RP (Reporting Party);

  c.      Male subject shorts and shirt off;

  d.      Second to the last trailer on the right with an addition on it;

  e.      Is still trying to get into the house;

f. RP (Reporting Party) has four little kids in the house also;

g. Thinks that the male subject messed with the motion detector cause it's not working now; and

h. Blk Dodge Dakota, brownish Ford P/U

(Dziadosz Aff., ¶28, Watson Aff., ¶28, Camden County Dispatch Log Ex. D).

RESPONSE: Admit.

169. Based upon the dispatch and the information he read on his in-car computer, Deputy Dziadosz believed that the individual had committed a burglary under Missouri law. (Dziadosz Aff., ¶29).

RESPONSE: Deny. Deputy Dziadosz "immediately realized he was dealing with an emotionally disturbed person, and not so much a burglary suspect." (Missouri State Highway Patrol Interview of Deputy Dziadosz.) Further, based on the Dispatch Log and 911 call, it was clear Norman was an emotionally disturbed person, not a burglar. (Dispatch Log.)

**REPLY:**

**Deputy Dziadosz is permitted to provide lay and expert opinion testimony as to his belief that the individual committed a burglary under Missouri law based upon his training and experience as a licensed law enforcement officer since 2007. (Defendants' Statement of Facts ¶¶54-74) See Fed.R.Evid. 701; Fed.R.Evid. 702; U.S. v. Smith, 591 F.3d 974 (8th Cir. 2010). Furthermore, whether or not the individual was an emotionally disturbed person due to voluntary intoxication is irrelevant in determining if that individual has committed a criminal act under Missouri law, such as a burglary, and, therefore, Plaintiffs' denial is not supported by admissible evidence that specifically controverts the statement contained in paragraph 169. See State v. Wright, 376 S.W.3d 696 (Mo.App. 2012). Additionally,**

Plaintiffs' attorney's interpretation of the facts and the information contained in the Dispatch Log (Defendants' Exhibit D), which does not state that Norman was an emotionally disturbed person, does not dispute this fact. Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the statement set forth in paragraph 169 and, therefore, the statement set forth in paragraph 169 should be deemed admitted. See Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098; Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

170. When Deputy Dziadosz arrived at 258 Teer Drive, he did not observe anyone outside the residence so he started walking toward the residence. (Deposition of Richard Dziadosz, p. 56 LL 6-15 attached as Ex. M and hereinafter referred to as "Dziadosz Depo.").

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

171. While walking toward the residence, Deputy Dziadosz observed a female walking toward him from another residence. (Dziadosz Depo., p. 56 LL 12-15).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

172. Deputy Dziadosz stopped and asked the female if she was the one that had called for Camden County deputies with her responding that she was not. (Dziadosz Depo., p. 56 LL

12-22).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

173. While talking to the female, Deputy Dziadosz heard an individual yelling in the distance with the female confirming that the individual yelling was the individual he was looking for. (Dziadosz Depo., p. 56 LL 16-22).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

174. The female also confirmed that the individual had been staying with her that night. (Dziadosz Depo., p. 57 LL 1-6).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

175. Deputy Dziadosz began walking toward a residence located at 188 Teer Drive in an attempt to locate the male who was yelling and screaming. (Dziadosz Aff., ¶30).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

176. As Deputy Dziadosz was walking in the direction of the male who was yelling, Sgt. Fiene confirmed that he had arrived on Teer Drive at 4:35:07 a.m. (Fiene Aff., ¶31; Dispatch Log attached as Ex. D).

RESPONSE: Admit.

177. Deputy Dziadosz confirmed to Sgt. Fiene on the radio that the individual had fled on foot westbound from the victim's house with Sgt. Fiene stopping his vehicle and walking across a field eastbound toward Deputy Dziadosz in an attempt to keep the individual between

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

the two of them.  (Fiene Aff., ¶32).

RESPONSE: Deny that Mr. Norman "fled." Deputy Dziadosz testified that Mr. Norman was wandering "slowly" in the field. (Dziadosz Dep. 67.)

**REPLY:**

**The testimony of Deputy Dziadosz that was cited by Plaintiffs in support of their denial as well as other relevant testimony of Deputy Dziadosz is as follows:**

Q.      **Okay.  Take me back to where we were.  What does Sergeant Fiene [do] when he arrives on scene?**

A.      **He points his taser at Mr. Norman and gives him commands to put his hands on his head.**

Q.      **Other than telling him to put his hands on his head, did he say any other words to Mr. Norman?**

A.      **Not that I recall.**

Q.      **Did Mr. Norman obey Sergeant Fiene's commands?**

A.      **No, he did not.**

Q.      **What happened next?**

A.      **Like, Mr. Norman started walking, and we continued to give him commands.  At one point, I don't know – I don't know exactly what time-wise into it, but Sergeant Fiene deployed his taser striking Mr. Norman in the chest.**

Q.      **How long was Sergeant Fiene on the scene before he deployed his taser?**

A.      **Guesstimate, one or two minutes.**

Q.      **You said Mr. Norman started walking.**

A.      **Yes.**

Q.      **Where was he walking to?**

A.      **Initially, he walked towards the trailer.  We kind of moved our – changed our position to kind of block his, you know, route, and he turned around and started walking away from the trailer, which**

48

would be towards the woods.

Q.     Okay.  And he – was walking slowly?

A.     Yeah.

Q.     He wasn't running?

A.     No.

Q.     Was he walking in circles or how – I just don't understand.

A.     As in?

Q.     Could you explain to me his path as he's walking?

A.     His path was originally to my right going toward the trailer.  And we adjusted our position to block him from leaving – or escaping that direction.  He turned around and started walking toward – away from the trailer towards the woods.  And again, we just moved our position parallel to him.

(Dziadosz Depo., p. 66 LL 12-25, p. 67 LL 1-25, p. 68, LL 1-3 attached as Ex. Y)

The testimony cited by Plaintiffs as well as the other testimony obviously sets forth Deputy Dziadosz's general observations regarding Norman's movements at one particular point in time and does not describe every movement that Norman made throughout the deputies' entire interaction with Norman.  Nonetheless, Plaintiffs repeatedly cite to this same testimony to support their denials of many, if not all, of Defendants' factual statements that describe Norman's movements at any time during the deputies' interactions with Norman.  Clearly, Deputy Dziadosz's testimony that generally describes Norman's movement at one specific point in time during the deputies' interaction with Norman is insufficient to specifically controvert other testimony that describes Norman's movements at other times during the deputies' interaction with Norman.

Additionally, Deputy Dziadosz's testimony does not support Plaintiffs' attorney's characterization of that testimony.  Although Deputy Dziadosz's testimony does state that

Norman was walking slowly at one point in time during the deputies' interaction with Norman, Deputy Dziadosz's never testified that Norman was "wandering 'slowly' in the field." Deputy Dziadosz's testimony clearly states that at one point in time during his and Sergeant Fiene's interaction with Norman that Norman started walking towards the trailer and that Deputy Dziadosz and Sergeant Fiene then adjusted their positions to block Norman from escaping. The testimony further states that Norman then turned around and began walking away from the trailer. Accordingly, Plaintiffs' attorney's mischaracterization of Deputy Dziadosz's testimony should not be considered in ruling on Defendants' motion for summary judgment. See Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098.

Even if Deputy Dziadosz's actual testimony is analyzed (instead of Plaintiffs' attorney's mischaracterization of it), that testimony still fails to specifically controvert the factual statement set forth in paragraph 177. The factual statement set forth in paragraph 177 describes events that occurred *before* Sergeant Fiene ever located and personally observed Norman. The testimony cited by Plaintiffs and the other relevant testimony, however, contains Deputy Dziadosz's general description of Norman's movements at one specific point in time *after* he and Sergeant Fiene had located and personally observed Norman. Accordingly, the testimony cited by Plaintiffs is not even describing the same event as the factual statement set forth in paragraph 177 and, therefore, is obviously insufficient to specifically controvert the factual statement set forth in paragraph 177. For this reason, the factual statement set forth in paragraph 177 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this

**factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

178.    Deputy Dziadosz continued to walk into the back yard of a residence located at 188 Teer Drive utilizing his flashlight as he walked because it was dark and no street lights were in the area.  (Dziadosz Aff., ¶31).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

179.    Deputy Dziadosz located a male wearing only boxer shorts facing a window in the back yard of a residence yelling toward the residence.  (Dziadosz Depo., p. 58 LL 3-21).

RESPONSE: Admit.

180.    Deputy Dziadosz noted that the individual was yelling at the residence and at times would look up at the sky and yell at the sky.  (Dziadosz Depo., p. 59 LL 11-14).

RESPONSE: Admit.

181.    The only words spoken by the individual that Deputy Dziadosz could understand was "God."  (Dziadosz Depo., p. 59 LL 15-18).

RESPONSE: Admit.

182.    Deputy Dziadosz illuminated the individual with his flashlight, identified himself as a Camden County deputy sheriff, and told the individual to put his hands in the air.  (Dziadosz p. 59 LL 19-22).

RESPONSE: Admit.

183.    The individual did not comply with Deputy Dziadosz's command to put his hands

in the air.  (Dziadosz Aff., ¶32).

RESPONSE: Admit.

184.    Deputy Dziadosz continued to give the individual commands to put his hands in the air with the individual refusing to comply.  (Dziadosz Aff., ¶33).

RESPONSE: Admit.

185.    Deputy Dziadosz unholstered his X-26 taser and activated the taser light pointing it to the ground while he continued to give commands to the individual to put his hands in the air with the individual starting to walk away looking at the sky.  (Dziadosz Depo., p. 60 LL 2-7).

RESPONSE: Admit.

186.    The individual was walking away from the residence in a backyard with waist high grass.  (Dziadosz Depo., p. 60 LL 8-16).

RESPONSE: Admit.

187.    As the individual was walking away, Deputy Dziadosz pointed the taser light at the small of the individual's back as he continued to give the individual commands to put his hands in the air.  (Dziadosz Depo., p. 60 LL 21-25).

RESPONSE: Admit.

188.    The individual did not obey any of Deputy Dziadosz's commands.  (Dziadosz Depo., p. 61 LL 10-11).

RESPONSE: Admit.

189.    At this time, Deputy Dziadosz believed that the individual was an emotionally disturbed person because it did not appear that he was in a rational state of mind because he had looked to the sky and yelled at God.  (Dziadosz Depo., p. 61 LL 12-25).

RESPONSE: Admit.

190.     Deputy Dziadosz believed that the individual was either intoxicated or under the influence of narcotics.  (Dziadosz Aff., ¶34).

RESPONSE: Admit.

191.     Deputy Dziadosz had arrested many intoxicated individuals and individuals under the influence of narcotics before October 4, 2011 and knew from his experience in arresting these individuals that their behavior could be unpredictable and that the individuals could become violent and resist arrest. (Dziadosz Aff., ¶35).

RESPONSE: Deny. This statement contains conclusions, not factual assertions. Furthermore, the statement "their behavior could be unpredictable and that the individuals could become violent and resist arrest" is based on speculation and has no factual basis.

**REPLY:**

**Deputy Dziadosz is permitted to provide lay opinion testimony as to his personal knowledge and perceptions regarding the behavior of intoxicated individuals and individuals under the influence of narcotics based upon his experience in arresting such individuals.  See Fed.R.Evid. 701; Smith, 591 F.3d at 982.**

**To the extent that it is deemed that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.**

192.     While the individual was walking away from Deputy Dziadosz, the individual turned and faced Deputy Dziadosz with Deputy Dziadosz again telling the individual to put his

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

hands in the air with the individual refusing to comply. (Dziadosz Aff., ¶36).

RESPONSE: Admit.

193. Deputy Dziadosz believed that the individual had to be taken into custody because he had entered a residence unlawfully, he fought with the homeowner, he refused to follow commands, he walked away, his behavior was unpredictable due to his emotional state, and he could harm a member of the public, himself, or Deputy Dziadosz. (Dziadosz Aff., ¶37).

RESPONSE: Deny. This statement contains conclusions, not factual assertions. And a "belief" or state of mind is not a factual assertion. Furthermore, Mr. Norman likely could not harm a member of the public, himself, or Deputy Dziadosz. Mr. Norman was unarmed (Dziadosz Dep. 58) and surrounded by officers in the middle of a field (Id. at 60, 62-63). Further, Deputy Dziadosz "immediately realized he was dealing with an emotionally disturbed person, and not so much a burglary suspect." (Missouri State Highway Patrol Interview of Deputy Dziadosz.) And Deputy Dziadosz is 6'0" tall and weighs 165 lbs. (Dziadosz Dep. 6) while Mr. Norman was only 5'4" tall and weighed 170 lbs. (Stacy Dep. 35-36). Moreover, Mr. Norman never attempted to strike, hit, kick, or make contact with anyone, including the deputies (See, e.g., Dziadosz Dep. 107.)

**REPLY:**

**Deputy Dziadosz is permitted to provide lay opinion testimony as to his personal knowledge and perceptions regarding the behavior of individuals under the influence of narcotics based upon his experience in arresting such individuals. See Fed.R.Evid. 701; Smith, 591 F.3d at 982. Furthermore, the conclusory and speculative statement by Plaintiffs' attorney that "Mr. Norman likely could not harm a member of the public" is not admissible evidence and is insufficient to defeat a properly supported motion for summary**

judgment.  **Postscript Enterprises v. City of Bridgeton**, 905 F.2d 223 at 226; **Duluth News-Tribune, A Div. of Northwest Publications, Inc.**, 84 F.3d at 1098.  Additionally, the testimony cited by Plaintiffs in support of their denial does not specifically controvert the statement set forth in paragraph 193 and, therefore, the statement set forth in paragraph 193 should be deemed admitted.  See **Evans**, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See **Anderson**, 477 U.S. at 248.

194.    Deputy Dziadosz believed that the individual posed a threat to his safety, the safety of the individual, and the safety of other individuals in the neighborhood because he had unlawfully entered one residence, potentially could enter another residence, and because his irrational behavior of talking to God indicated that he was intoxicated or under the influence of narcotics. (Dziadosz Aff., ¶38).

RESPONSE: Deny. This statement contains conclusions, not factual assertions. And a "belief" or state of mind is not a factual assertion. Furthermore, Mr. Norman likely could not harm a member of the public, himself, or Deputy Dziadosz. Mr. Norman was unarmed (Dziadosz Dep. 58) and surrounded by officers in the middle of a field (Id. at 60, 62-63). Further, Deputy Dziadosz "immediately realized he was dealing with an emotionally disturbed person, and not so much a burglary suspect." (Missouri State Highway Patrol Interview of Deputy Dziadosz.) And Deputy Dziadosz is 6'0" tall and weighs 165 lbs. (Dziadosz Dep. 6) while Mr. Norman was only 5'4" tall and weighed 170

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

lbs. (Stacy Dep. 35-36). Moreover, Mr. Norman never attempted to strike, hit, kick, or make contact with anyone, including the deputies (See, e.g., Dziadosz Dep. 107.)

**REPLY:**

**Deputy Dziadosz is permitted to provide lay opinion testimony as to his perceptions (*i.e.* belief) that the individual posed a threat to the safety of others based upon his training and experience as a licensed law enforcement officer since 2007. (Defendants' Statement of Facts ¶¶54-74). See Fed.R.Evid. 701; <u>Smith</u>, 591 F.3d at 982. Furthermore, the conclusory and speculative statement by Plaintiffs' attorney that "Mr. Norman likely could not harm a member of the public" is not admissible evidence and is insufficient to defeat a properly supported motion for summary judgment. <u>Postscript Enterprises v. City of Bridgeton</u>, 905 F.2d 223 at 226; <u>Duluth News-Tribune, A Div. of Northwest Publications, Inc.</u>, 84 F.3d at 1098. Additionally, the testimony cited by Plaintiffs in support of their denial does not specifically controvert the statement set forth in paragraph 194 and, therefore, the statement set forth in paragraph 194 should be deemed admitted. <u>See Evans</u>, 2009 WL 2408381.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. <u>See Anderson</u>, 477 U.S. at 248.**

195.     The individual saw the laser light from the taser and tried to brush the laser light away with his hand and stated "leave me alone" to Deputy Dziadosz. (Dziadosz Depo., p. 62 LL 20-25, p. 63 LL 1-2).

RESPONSE: Admit Mr. Norman tried to brush the laser light away with his hand. Deny that he said "leave me alone" to Deputy Dziadosz. Dziadosz testified that the only word he could make out was "God." (Dziadosz Dep. 59.)

**REPLY:**

**The testimony cited by Defendants is as follows:**

> **Q.  Okay.  What happened after he had moved away from the trailer?**
>
> **A.  Sergeant Fiene, basically, arrived, coming from the opposite direction that I came from.  And prior to his arrival, Mr. Norman turned and faced me.  And again, I was telling him to put his hands in the air.  I had the laser light on him, and he kind of, like, brushed – tried to brush the laser light off and stated, "Leave me alone."**

**The testimony cited by Defendants clearly demonstrates that Deputy Dziadosz testified that the individual stated, "Leave me alone"** *after* **the individual had moved away from the trailer.  The testimony cited by Plaintiffs refers to statements made by the individual** *before* **the individual had walked away from the trailer.  Accordingly, the testimony cited by Plaintiffs is not even pertaining to the same time period or describing the same event as the factual statement set forth in paragraph 195 and, therefore, the testimony cited by Plaintiffs is obviously insufficient to specifically controvert the factual statement set forth in paragraph 195.  For this reason, the factual statement set forth in paragraph 195 should be deemed admitted.  See Evans, 2009 WL 2408381.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.**

196.    As the individual was facing Deputy Dziadosz, Sgt. Fiene approached the

individual from the opposite direction.  (Dziadosz Aff., ¶39).

RESPONSE: Admit.

197.    At this time, Sgt. Fiene arrived in the backyard of the residence and observed the individual walking away from Deputy Dziadosz with the individual refusing to comply as Deputy Dziadosz commanded him to stop and show his hands.  (Fiene Aff., ¶33).

RESPONSE: Deny that Mr. Norman was walking away. Deputy Dziadosz testified that Mr. Norman was wandering "slowly" in the field. (Dziadosz Dep. 67.)

**REPLY:**

**The verbatim testimony by Deputy Dziadosz that is cited by Plaintiffs in their denial is set forth verbatim in Defendants' reply to paragraph 177 above and is incorporated herein by reference.  Although Deputy Dziadosz's testimony does state that Norman was walking slowly at one point in time during the deputies' interaction with Norman, Deputy Dziadosz's never testified that Norman was "wandering 'slowly' in the field."  Deputy Dziadosz's testimony clearly states that at one point in time during his and Sergeant Fiene's interaction with Norman that Norman started walking towards the trailer and that Deputy Dziadosz and Sergeant Fiene then adjusted their positions to block Norman from escaping.  (See pp. 66, 67, and 68 of Dziadosz's Depo. attached as Ex. Y)  The testimony further states that Norman then turned around and began walking away from the trailer. Id.  Accordingly, Plaintiffs' attorney's mischaracterization of Deputy Dziadosz's testimony should not be considered in ruling on Defendants' motion for summary judgment.  See Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098.**

**Moreover, the cited testimony by Deputy Dziadosz is actually consistent with the**

factual statement set forth in paragraph 197, and certainly does not controvert it. Accordingly, Plaintiffs' denial fails to specifically controvert the factual statement set forth in paragraph 197 and, therefore, the factual statement set forth in paragraph 197 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

198.    Sgt. Fiene continued to walk toward the individual drawing his taser and issuing commands to the individual for him to stop and for him to put his hands on his head.  (Fiene Depo., p. 35 LL 13-25, p. 36 L 1).

RESPONSE: Admit.

199.    The individual refused to comply with Sgt. Fiene's commands with him mumbling and growling at Sgt. Fiene and Deputy Dziadosz.  (Fiene Aff., ¶34).

RESPONSE: Deny. While Sgt. Fiene and Deputy Dziadosz aimed their tasers at Mr. Norman, he was just walking, mumbling, and growling. (Fiene Dep. 35-36; Dziadosz Dep. 66-67.) Neither Sgt. Fiene nor Deputy Dziadosz testified that Mr. Norman mumbled or growled "at" them.

**REPLY:**

Plaintiffs admit that Norman was walking, mumbling, and growling while Sergeant Fiene and Deputy Dziadosz were present, but deny that Norman was mumbling and growling *at* Sergeant Fiene and Deputy Dziadosz.  Any factual dispute as to whether or not

Norman was mumbling or growling at Sergeant Fiene and/or Deputy Dziadosz will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

200. Sgt. Fiene observed the individual stop walking for a second, look up at the sky and say something about God or Jesus and the Holy Ghost, but then the individual started walking away again. (Fiene Depo., p. 36 LL 8-17).

RESPONSE: Deny that Mr. Norman was walking away. Deputy Dziadosz testified that Mr. Norman was wandering "slowly" in the field. (Dziadosz Dep. 67.)

REPLY:

The testimony by Deputy Dziadosz that is cited by Plaintiffs in their denial is set forth verbatim in Defendants' reply to paragraph 177 above and is incorporated herein by reference. Although Deputy Dziadosz's testimony does state that Norman was walking slowly at one point in time during the deputies' interaction with Norman, Deputy Dziadosz's never testified that Norman was "wandering 'slowly' in the field." Deputy Dziadosz's testimony clearly states that at one point in time during his and Sergeant Fiene's interaction with Norman that Norman started walking towards the trailer and that Deputy Dziadosz and Sergeant Fiene then adjusted their positions to block Norman from escaping. (See pp. 66, 67, and 68 of Dziadosz's Depo. attached as Ex. Y) The testimony further states that Norman then turned around and began walking away from the trailer. Id. Accordingly, Plaintiffs' attorney's mischaracterization of Deputy Dziadosz's testimony should not be considered in ruling on Defendants' motion for summary judgment. See Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest

Even if Deputy Dziadosz's actual testimony is analyzed (instead of Plaintiffs' attorney's mischaracterization of it), that testimony still fails to specifically controvert the factual statement set forth in paragraph 200. Deputy Dziadosz's testimony contains a general description of Norman's movements at one specific point in time during his and Sergeant Fiene's interaction with Norman. The undisputed facts clearly demonstrate that the events described in the factual statement set forth in paragraph 200 occurred *after* the events generally described by Deputy Dziadosz in the testimony cited by Plaintiffs in their denial. Accordingly, the testimony cited by Plaintiffs is not even describing the same event as the factual statement set forth in paragraph 200 and, therefore, is obviously insufficient to specifically controvert the factual statement set forth in paragraph 200. For this reason, the factual statement set forth in paragraph 200 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

201. At this point, Sgt. Fiene believed that the individual was under the influence of narcotics because of his refusal to comply with commands, his talking to God, the fact he was in boxer shorts when the temperature was in the 40s, and because the individual was out at 4:30 a.m. in the morning forcing his way into other people's houses. (Fiene Depo., p. 37 LL 19-25, p. 38 LL 1-11).

RESPONSE: Deny. The statement "other people's homes" is vague and ambiguous. Moreover, Mr. Norman only attempted to enter Mr. Cramer's house, not "other people's homes." (Fiene Dep. 31.) Further, Mr. Norman entered the home only after Mr. Cramer opened the door. (Cramer Dep. 17.)

**REPLY:**

**It is undisputed that Norman had entered Cramer's house prior to Norman's interaction with the deputies. Furthermore, Plaintiffs' denial fails to specifically controvert the factual statement set forth in paragraph 201 and, therefore, the factual statement set forth in paragraph 201 should be deemed admitted. See Evans, 2009 WL 2408381.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

202. Sgt. Fiene had arrested many individuals under the influence of narcotics before October 4, 2011 and knew from his experience in arresting these individuals that their behavior could be unpredictable and that these individuals could become violent and resist arrest. (Fiene Aff., ¶35).

RESPONSE: Deny. This statement contains conclusions, not factual assertions. The statement "their behavior could be unpredictable and that the individuals could become violent and resist arrest" is based on speculation and has no factual basis. Furthermore, Mr. Norman likely could not harm a member of the public, himself, or Sgt. Fiene. Mr. Norman was unarmed (Dziadosz Dep. 58) and surrounded by officers in the middle of a

field (Id. at 60, 62-63).

**REPLY:**

**Sergeant Fiene is permitted to provide lay opinion testimony as to his personal knowledge and perceptions regarding the behavior of individuals under the influence of narcotics based upon his experience in arresting such individuals.** **See Fed.R.Evid. 701; Smith, 591 F.3d at 982.** **Furthermore, the conclusory and speculative statement by Plaintiffs' attorney that "Mr. Norman likely could not harm a member of the public, himself, or Sgt. Fiene" is not admissible evidence and is insufficient to defeat a properly supported motion for summary judgment.** **See Postscript Enterprises, 905 F.2d 223 at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098. Additionally, the testimony cited by Plaintiffs in support of their denial does not specifically controvert the factual statement set forth in paragraph 202 and, therefore, the factual statement set forth in paragraph 202 should be deemed admitted.** **See Evans, 2009 WL 2408381.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.** **See Anderson, 477 U.S. at 248.**

203.    Sgt. Fiene believed that the individual posed a threat to his safety, the safety of Deputy Dziadosz, the safety of the individual, and the safety of other individuals in the neighborhood because he was under the influence of narcotics and was acting irrationally by talking to God making his behavior unpredictable, and because he had unlawfully entered one

residence and could potentially enter other residences. (Fiene Aff., ¶36).

> RESPONSE: Deny. This statement contains conclusions, not factual assertions. And a "belief" or state of mind is not a factual assertion. Moreover, Mr. Norman likely could not harm a member of the public, himself, or the officers. Mr. Norman was unarmed (Dziadosz Dep. 58) and surrounded by officers in the middle of a field (Id. at 60, 62-63). Moreover, Sergeant Fiene recognized Mr. Norman was an emotionally disturbed person "within seconds of seeing him." (Fiene Dep. 83.) And Mr. Norman never attempted to strike, hit, kick, or make contact with anyone, including the deputies. (See, e.g., Dziadosz Dep. 107.)

**REPLY:**

**Sergeant Fiene is permitted to provide lay opinion testimony as to his perceptions (*i.e.* belief) that the individual posed a threat to the safety of others based upon his experience in arresting individuals under the influence of narcotics and his training and experience as a licensed law enforcement officer since 1997. (Defendants' Statement of Facts ¶¶21-26 and 36-50)  See Smith, 591 F.3d at 982; Fed.R.Evid. 701.  Furthermore, the conclusory and speculative statement by Plaintiffs' attorney that "Mr. Norman likely could not harm a member of the public, himself, or the officers" is not admissible evidence and is insufficient to defeat a properly supported motion for summary judgment.  Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098.  Additionally, the testimony cited by Plaintiffs in support of their denial does not specifically controvert the factual statement set forth in paragraph 203 and, therefore, the factual statement set forth in paragraph 203 should be deemed admitted.  See Evans, 2009 WL 2408381.**

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.

204.     Based on the information known to him, Sgt. Fiene believed the individual had committed a burglary under Missouri law. (Fiene Aff., ¶37).

RESPONSE: Deny. This statement contains conclusions, not factual assertions. And a "belief" or state of mind is not a factual assertion. This statement is based on speculation and has no factual basis. Moreover, Sergeant Fiene recognized Mr. Norman was an emotionally disturbed person "within seconds of seeing him," not a burglar. (Fiene Dep. 83.)

REPLY:

Sergeant Fiene is permitted to provide lay and expert opinion testimony as to his perceptions (*i.e.* belief) that the individual committed a burglary under Missouri law based upon his training and experience as a licensed law enforcement officer since 1997. (Defendants' Statement of Facts ¶¶21-26 and 36-50)  See Fed.R.Evid. 702; Smith, 591 F.3d at 982; Fed.R.Evid. 701.  Furthermore, the testimony cited by Plaintiffs in support of their denial does not specifically controvert the factual statement set forth in paragraph 204 and, therefore, the factual statement set forth in paragraph 204 should be deemed admitted.  See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not

**affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.**

205. Sgt. Fiene told the individual several times to stop, two or three times to put his hands on his head, and commanded him on a couple of occasions to get on the ground. (Fiene Depo., p. 37 LL 10-15).

RESPONSE: Admit.

206. After the individual refused to comply with any of Sgt. Fiene's commands and refused to stop, Sgt. Fiene then activated his taser and placed the taser light on the individual's chest and told him if he didn't stop he was going to taser him. (Fiene Depo., p. 38 LL 14-20).

RESPONSE: Admit.

207. After making this statement, the individual looked down at the red laser light on his chest from Sgt. Fiene's taser and stated "bring it on. I ain't fucking scared of that." (Fiene Depo., p. 38 LL 23-25, p. 39 LL 1-2).

RESPONSE: Deny. Deputy Dziadosz was in close proximity and never reported hearing Mr. Norman say this. (Dziadosz Dep. 63-64, 66-67.) Further, this characterization is self-serving and inconsistent with every other description of Mr. Norman's lucidity and the unintelligible nature of his speech. (Id. at 59.)

**REPLY:**

**Plaintiffs' attorney's suggestion that because one individual purportedly did not hear someone say something that it must have not been said is not admissible evidence and is insufficient to defeat a motion for summary judgment. <u>See</u> <u>Postscript Enterprises</u>, 905 F.2d at 226; <u>Duluth News-Tribune, A Div. of Northwest Publications, Inc.,</u> 84 F.3d at 1098.**

Furthermore, Plaintiffs' attorney's interpretation of the evidence regarding Mr. Norman's lucidity and the nature of his speech is also not admissible evidence and is also insufficient to defeat a motion for summary judgment. **Id.** Accordingly, Plaintiffs' denial fails to cite to any admissible evidence that specifically controverts the factual statement set forth in paragraph 207 and, therefore, the factual statement set forth in paragraph 207 should be deemed admitted. **See Evans, 2009 WL 2408381.**

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. **See Anderson, 477 U.S. at 248.**

208.    Sgt. Fiene decided that the individual had to be taken into custody because he had entered a residence unlawfully, he had fought with the homeowner, he refused to follow commands, he walked away, his behavior was unpredictable due to him being under the influence of narcotics, and he could harm a member of the public, himself, or the deputies. (Fiene Aff., ¶38).

RESPONSE: Deny. This statement contains conclusions, not factual assertions. Sgt. Fiene's "decision" is a state of mind, and it is not a factual assertion and has no factual basis. Moreover, Mr. Norman likely could not harm a member of the public, himself, or the officers. Mr. Norman was only 5'4" tall and weighed 170 lbs. (Stacy Dep. 35-36), while Sgt. Fiene was 6'3" tall and weighed 230 lbs. (Fiene Dep. 6) and Deputy Dziadosz was 6'0" tall and weighed 165 lbs. (Dziadosz Dep. 6). Mr. Norman was unarmed (Dziadosz Dep. 58) and surrounded by officers in the middle of a field (Id. at 60, 62-63).

Sgt. Fiene admits that he thought Mr. Norman was an emotionally disturbed person. (Fiene Dep. 83.) And Mr. Norman never attempted to strike, hit, kick, or make contact with anyone, including the deputies. (See, e.g., Dziadosz Dep. 107.)

**REPLY:**

**Sergeant Fiene is permitted to provide lay opinion testimony as to personal knowledge of why he engaged in certain acts as a law enforcement officer based upon his training and experience as a licensed law enforcement officer since 1997 and his perceptions. (Defendants' Statement of Facts ¶¶21-26 and 36-50)** See **Smith**, 591 F.3d at 982; Fed.R.Evid. 701. **Furthermore, the conclusory and speculative statement by Plaintiffs' attorney that "Mr. Norman likely could not harm a member of the public, himself, or the officers" is not admissible evidence and is insufficient to defeat a properly supported motion for summary judgment.** Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098. **Additionally, the testimony cited by Plaintiffs in support of their denial does not specifically controvert the factual statement set forth in paragraph 208 and, therefore, the factual statement set forth in paragraph 208 should be deemed admitted.** See Evans, 2009 WL 2408381.

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.** See Anderson, 477 U.S. at 248.

209. Sgt. Fiene decided to deploy his taser because the individual continued to walk away from him and continued to ignore his commands to stop, put his hands on his head, and to

get on the ground.  (Fiene Aff., ¶39).

RESPONSE: Deny. This statement contains conclusions, not factual assertions. Sgt. Fiene's "decision" is a state of mind, and it is not a factual assertion and has no factual basis.

**REPLY:**

**Sergeant Fiene is permitted to provide lay opinion testimony as to personal knowledge of why he engaged in certain acts as a law enforcement officer based upon his training and experience as a licensed law enforcement officer since 1997 and his perceptions. (Defendants' Statement of Facts ¶¶21-28 and 36-50)  See Smith, 591 F.3d at 982; Fed.R.Evid. 701.  For this reason, this fact should be deemed admitted.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.**

210.    Sgt. Fiene believed that the use of the taser was the safest method to take the individual into custody without injury to the individual or the officers because it was a non-lethal use of force.  (Fiene Aff., ¶40).

RESPONSE: Deny. This statement contains conclusions, not factual assertions. Sgt. Fiene's "belief" is a state of mind, and it is not a factual assertion and has no factual basis.

**REPLY:**

**Sergeant Fiene is permitted to provide lay opinion testimony as to his perceptions**

(*i.e.* belief) that "the use of the taser was the safest method to take the individual into custody without injury to the individual or the officers because it was a non-lethal use of force" based upon his experience in arresting individuals and his training and experience as a licensed law enforcement officer since 1997. (Defendants' Statement of Facts ¶¶21-28 and 36-50)  See Smith, 591 F.3d at 982; Fed.R.Evid. 701.  Furthermore, Plaintiffs' denial fails to set forth any facts specifically controverting the statement set forth above in paragraph 210 and, therefore, the statement set forth above in paragraph 210 should be deemed admitted.  See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.

211.    The individual was facing Sgt. Fiene when he decided to deploy the taser with both probes striking the individual in the chest.  The electrical charge from the taser caused the individual to fall to the ground for the five-second cycle of the taser.  (Fiene Depo., p. 41 LL 22-25, p. 42 LL 1-10).

RESPONSE: Admit.

212.    The individual flailed and hollered as he was on the ground, but as soon as the five-second taser cycle finished, the individual immediately jumped back on his feet.  (Id.)

RESPONSE: Admit.

213.    Sgt. Fiene again commanded the individual on several occasions to get back down on the ground and put his hands behind his back because he was under arrest, but the individual

refused to comply with the commands.  (Fiene Depo., p. 42 LL 14-24).

RESPONSE: Admit.

214.    Sgt. Fiene then pulled the trigger on the taser for a second time with the individual immediately falling to the ground for the five-second cycle of the taser.  (Id.).

RESPONSE: Admit.

215.    Sgt. Fiene again commanded the individual to put his hands behind his back, but the individual refused and got back up from the ground flailing and swinging his arms and walking away from Sgt. Fiene.  (Fiene Aff., ¶41).

RESPONSE: Deny. Mr. Norman was wandering "slowly" in the field. (Dziadosz Dep. 67.)

**REPLY:**

**The testimony by Deputy Dziadosz that is cited by Plaintiffs in their denial is set forth verbatim in Defendants' reply to paragraph 177 above and is incorporated herein by reference.  Although Deputy Dziadosz's testimony does state that Norman was walking slowly at one point in time during the deputies' interaction with Norman, Deputy Dziadosz's never testified that Norman was "wandering 'slowly' in the field."  The cited portion of Deputy Dziadosz's testimony and his other testimony clearly states that at one point in time during his and Sergeant Fiene's interaction with Norman that Norman started walking towards the trailer and that Deputy Dziadosz and Sergeant Fiene then adjusted their positions to block Norman from escaping.  (See pp. 66, 67, and 68 of Dziadosz's Depo. attached as Ex. Y)  The testimony further states that Norman then turned around and began walking away from the trailer. Id.  Accordingly, Plaintiffs' attorney's mischaracterization of Deputy Dziadosz's testimony should not be considered in ruling on**

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

Defendants' motion for summary judgment. See Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098.

Even if Deputy Dziadosz's actual testimony is analyzed (instead of Plaintiffs' attorney's mischaracterization of it), that testimony still fails to specifically controvert the factual statement set forth in paragraph 215. Deputy Dziadosz's testimony contains a general description of Norman's movements at one specific point in time during his and Sergeant Fiene's interaction with Norman. The undisputed facts clearly demonstrate that the events described in the factual statement set forth in paragraph 215 occurred *after* the events generally described by Deputy Dziadosz in the testimony cited by Plaintiffs in their denial. Accordingly, the testimony cited by Plaintiffs is not even describing the same event as the factual statement set forth in paragraph 215 and, therefore, is obviously insufficient to specifically controvert the factual statement set forth in paragraph 215. For this reason, the factual statement set forth in paragraph 215 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

216. Sgt. Fiene again pulled the trigger of the taser to give the individual another five-second cycle, but the taser failed to activate with Sgt. Fiene believing that the individual had broken the wires leading from the taser to the taser probes that were stuck in his chest. (Fiene Depo., p. 43 LL 1-9).

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

RESPONSE: Admit.

217.    Sgt. Fiene then ordered the individual repeatedly to stop resisting and get on the ground with the individual refusing to comply.  (Fiene Aff., ¶42).

RESPONSE: Admit.

218.    Sgt. Fiene then removed the taser cartridge from the front of the taser and ran up to the individual and attempted to drive stun him with the taser twice in the back because the individual was trying to run away.  (Fiene Depo., p. 43 LL 12-18).

RESPONSE: Deny. Mr. Norman was not "trying to run away." Deputy Dziadosz testified that Mr. Norman was wandering "slowly" and aimlessly in the field. (Dziadosz Dep. 67.)

**REPLY:**

**The testimony by Deputy Dziadosz that is cited by Plaintiffs in their denial is set forth verbatim in Defendants' reply to paragraph 177 above and is incorporated herein by reference.  Although Deputy Dziadosz's testimony does state that Norman was walking slowly at one point in time during the deputies' interaction with Norman, Deputy Dziadosz's never testified that Norman was "wandering 'slowly' and aimlessly in the field." The cited portion of Deputy Dziadosz's testimony and his other testimony clearly states that at one point in time during his and Sergeant Fiene's interaction with Norman that Norman started walking towards the trailer and that Deputy Dziadosz and Sergeant Fiene then adjusted their positions to block Norman from escaping.  (See pp. 66, 67, and 68 of Dziadosz's Depo. attached as Ex. Y)  The testimony further states that Norman then turned around and began walking away from the trailer.  Id.  Accordingly, Plaintiffs' attorney's mischaracterization of Deputy Dziadosz's testimony should not be considered in ruling on Defendants' motion for summary judgment.  See Postscript Enterprises, 905 F.2d at 226;**

**Duluth News-Tribune, A Div. of Northwest Publications, Inc.**, 84 F.3d at 1098.

Even if Deputy Dziadosz's actual testimony is analyzed (instead of Plaintiffs' attorney's mischaracterization of it), that testimony still fails to specifically controvert the factual statement set forth in paragraph 218. Deputy Dziadosz's testimony contains a general description of Norman's movements at one specific point in time during his and Sergeant Fiene's interaction with Norman. The undisputed facts clearly demonstrate that the events described in the factual statement set forth in paragraph 218 occurred *after* the events generally described by Deputy Dziadosz in the testimony cited by Plaintiffs in their denial. Accordingly, the testimony cited by Plaintiffs is not even describing the same event as the factual statement set forth in paragraph 218 and, therefore, is obviously insufficient to specifically controvert the factual statement set forth in paragraph 218. For this reason, the factual statement set forth in paragraph 218 should be deemed admitted. See **Evans**, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See **Anderson**, 477 U.S. at 248.

219.    Sgt. Fiene applied at least two taser drive stuns to the back of the individual with the taser drive stuns having no effect. (Fiene Depo., p. 43 LL 23-25, p. 44 LL 1-4).

RESPONSE: Deny. Sgt. Fiene tasered Mr. Norman 15 times. (Taser Records, Camden County 00084.)

**REPLY:**

The Taser Records cited by Plaintiffs only confirm the number of times the taser was activated and do not provide any evidence as to the number of times Sergeant Fiene may have actually drive stunned Norman with the taser. Accordingly, the testimony cited by Plaintiffs does not specifically controvert the factual statement set forth in paragraph 219 and, therefore, the factual statement set forth in paragraph 219 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

220. The individual continued to walk away from Sgt. Fiene even though Sgt. Fiene continued to tell him to get on the ground, to stop, and stop resisting. (Fiene Depo., p. 45 LL 24-25, p. 46 LL 1-11).

RESPONSE: Deny. Deputy Dziadosz testified Mr. Norman was wandering "slowly" and aimlessly in the field. (Dziadosz Dep. 67.)

**REPLY:**

The testimony by Deputy Dziadosz that is cited by Plaintiffs in their denial is set forth verbatim in Defendants' reply to paragraph 177 above and is incorporated herein by reference. Although Deputy Dziadosz's testimony does state that Norman was walking slowly at one point in time during the deputies' interaction with Norman, Deputy Dziadosz's never testified that Norman was "wandering 'slowly' and aimlessly in the field." Deputy Dziadosz's testimony clearly states that at one point in time during his and

Sergeant Fiene's interaction with Norman that Norman started walking towards the trailer and that Deputy Dziadosz and Sergeant Fiene then adjusted their positions to block Norman from escaping. (See pp. 66, 67, and 68 of Dziadosz's Depo. attached as Ex. Y) The testimony further states that Norman then turned around and began walking away from the trailer. Id. Accordingly, Plaintiffs' attorney's mischaracterization of Deputy Dziadosz's testimony should not be considered in ruling on Defendants' motion for summary judgment. See Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098.

Even if Deputy Dziadosz's actual testimony is analyzed (instead of Plaintiffs' attorney's mischaracterization of it), that testimony still fails to specifically controvert the factual statement set forth in paragraph 220. Deputy Dziadosz's testimony contains a general description of Norman's movements at one specific point in time during his and Sergeant Fiene's interaction with Norman. The undisputed facts clearly demonstrate that the events described in the factual statement set forth in paragraph 220 occurred *after* the events generally described by Deputy Dziadosz in the testimony cited by Plaintiffs in their denial. Accordingly, the testimony cited by Plaintiffs is not even describing the same event as the factual statement set forth in paragraph 220 and, therefore, is obviously insufficient to specifically controvert the factual statement set forth in paragraph 220. For this reason, the factual statement set forth in paragraph 220 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.

221.    The individual continued to walk away from Sgt. Fiene swinging his arms backward as he was moving away.  (Fiene Depo., p. 46 LL 1-5).

RESPONSE: Deny. He was not walking away, as Deputy Dziadosz testified that Mr. Norman was wandering "slowly" and aimlessly in the field. (Dziadosz Dep. 67.)

**REPLY:**

**The testimony by Deputy Dziadosz that is cited by Plaintiffs in their denial is set forth verbatim in Defendants' reply to paragraph 177 above and is incorporated herein by reference.  Although Deputy Dziadosz's testimony does state that Norman was walking slowly at one point in time during the deputies' interaction with Norman, Deputy Dziadosz's never testified that Norman was "wandering 'slowly' and aimlessly in the field." Deputy Dziadosz's testimony clearly states that at one point in time during his and Sergeant Fiene's interaction with Norman that Norman started walking towards the trailer and that Deputy Dziadosz and Sergeant Fiene then adjusted their positions to block Norman from escaping.  (See pp. 66, 67, and 68 of Dziadosz's Depo. attached as Ex. Y)  The testimony further states that Norman then turned around and began walking away from the trailer.  Id.  Accordingly, Plaintiffs' attorney's mischaracterization of Deputy Dziadosz's testimony should not be considered in ruling on Defendants' motion for summary judgment.  See Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098.**

**Even if Deputy Dziadosz's actual testimony is analyzed (instead of Plaintiffs' attorney's mischaracterization of it), that testimony still fails to specifically controvert the**

factual statement set forth in paragraph 221. Deputy Dziadosz's testimony contains a general description of Norman's movements at one specific point in time during his and Sergeant Fiene's interaction with Norman. The undisputed facts clearly demonstrate that the events described in the factual statement set forth in paragraph 221 occurred *after* the events generally described by Deputy Dziadosz in the testimony cited by Plaintiffs in their denial. Accordingly, the testimony cited by Plaintiffs is not even describing the same event as the factual statement set forth in paragraph 221 and, therefore, is obviously insufficient to specifically controvert the factual statement set forth in paragraph 221. For this reason, the factual statement set forth in paragraph 221 should be deemed admitted. <u>See</u> <u>Evans</u>, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

222.    Sgt. Fiene then decided to use his flashlight to strike the individual in his right rear calf in an effort to bring the individual down to the ground. (Fiene Depo., p. 46 LL 2-11).

RESPONSE: Admit.

223.    The initial strike from Sgt. Fiene's flashlight in the white individual's rear calf had no effect with the individual continuing to walk away. (Fiene Depo., p. 46 LL 18-21).

RESPONSE: Deny. He was not walking away, as Deputy Dziadosz testified that Mr. Norman was wandering "slowly" and aimlessly in the field. (Dziadosz Dep. 67.)

**REPLY:**

The testimony by Deputy Dziadosz that is cited by Plaintiffs in their denial is set forth verbatim in Defendants' reply to paragraph 177 above and is incorporated herein by reference. Although Deputy Dziadosz's testimony does state that Norman was walking slowly at one point in time during the deputies' interaction with Norman, Deputy Dziadosz's never testified that Norman was "wandering 'slowly' and aimlessly in the field." Deputy Dziadosz's testimony clearly states that at one point in time during his and Sergeant Fiene's interaction with Norman that Norman started walking towards the trailer and that Deputy Dziadosz and Sergeant Fiene then adjusted their positions to block Norman from escaping. (See pp. 66, 67, and 68 of Dziadosz's Depo. attached as Ex. Y) The testimony further states that Norman then turned around and began walking away from the trailer. Id. Accordingly, Plaintiffs' attorney's mischaracterization of Deputy Dziadosz's testimony should not be considered in ruling on Defendants' motion for summary judgment. See Postscript Enterprises, 905 F.2d at 226; Duluth News-Tribune, A Div. of Northwest Publications, Inc., 84 F.3d at 1098.

Even if Deputy Dziadosz's actual testimony is analyzed (instead of Plaintiffs' attorney's mischaracterization of it), that testimony still fails to specifically controvert the factual statement set forth in paragraph 223. Deputy Dziadosz's testimony contains a general description of Norman's movements at one specific point in time during his and Sergeant Fiene's interaction with Norman. The undisputed facts clearly demonstrate that the events described in the factual statement set forth in paragraph 223 occurred *after* the events generally described by Deputy Dziadosz in the testimony cited by Plaintiffs in their denial. Accordingly, the testimony cited by Plaintiffs is not even describing the same event as the factual statement set forth in paragraph 223 and, therefore, is obviously insufficient

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

to specifically controvert the factual statement set forth in paragraph 223. For this reason, the factual statement set forth in paragraph 223 should be deemed admitted. See __Evans__, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See __Anderson__, 477 U.S. at 248.

224. Sgt. Fiene again struck the individual in the right rear calf with his flashlight with this having no effect on the individual with him continuing to walk away. (Fiene Depo., p. 46 LL 22-25, p. 47 LL 1-2).

RESPONSE: Deny. He was not walking away, as Deputy Dziadosz testified that Mr. Norman was wandering "slowly" and aimlessly in the field. (Dziadosz Dep. 67.)

**REPLY:**

The testimony by Deputy Dziadosz that is cited by Plaintiffs in their denial is set forth verbatim in Defendants' reply to paragraph 177 above and is incorporated herein by reference. Although Deputy Dziadosz's testimony does state that Norman was walking slowly at one point in time during the deputies' interaction with Norman, Deputy Dziadosz's never testified that Norman was "wandering 'slowly' and aimlessly in the field." Deputy Dziadosz's testimony clearly states that at one point in time during his and Sergeant Fiene's interaction with Norman that Norman started walking towards the trailer and that Deputy Dziadosz and Sergeant Fiene then adjusted their positions to block Norman from escaping. (See pp. 66, 67, and 68 of Dziadosz's Depo. attached as Ex. Y) The

testimony further states that Norman then turned around and began walking away from the trailer. <u>Id.</u> Accordingly, Plaintiffs' attorney's mischaracterization of Deputy Dziadosz's testimony should not be considered in ruling on Defendants' motion for summary judgment. <u>See</u> <u>Postscript Enterprises</u>, 905 F.2d at 226; <u>Duluth News-Tribune, A Div. of Northwest Publications, Inc.</u>, 84 F.3d at 1098.

Even if Deputy Dziadosz's actual testimony is analyzed (instead of Plaintiffs' attorney's mischaracterization of it), that testimony still fails to specifically controvert the factual statement set forth in paragraph 224. Deputy Dziadosz's testimony contains a general description of Norman's movements at one specific point in time during his and Sergeant Fiene's interaction with Norman. The undisputed facts clearly demonstrate that the events described in the factual statement set forth in paragraph 224 occurred *after* the events generally described by Deputy Dziadosz in the testimony cited by Plaintiffs in their denial. Accordingly, the testimony cited by Plaintiffs is not even describing the same event as the factual statement set forth in paragraph 224 and, therefore, is obviously insufficient to specifically controvert the factual statement set forth in paragraph 224. For this reason, the factual statement set forth in paragraph 224 should be deemed admitted. <u>See</u> <u>Evans</u>, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

225.    Sgt. Fiene then jumped on the individual's back and attempted to wrestle him to

the ground along with the assistance of Deputy Dziadosz.  (Fiene Depo., p. 47 LL 3-11).

RESPONSE: Admit.

226.     The individual wrestled away from Sgt. Fiene flailing his arms and moving away from Sgt. Fiene.  (Id., p. 47 LL 19-23).

RESPONSE: Deny. Apart from striking Mr. Norman with a flashlight and using a taser on Mr. Norman, Deputy Dziadosz testified that there was no contact between Sgt. Fiene and Mr. Norman before he fell to the ground. (Dziadosz Dep. 81-83.)

**REPLY:**

**To the extent that it is deemed that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.**

227.     The individual then lost his balance and fell to the ground.  (Id., p. 48 LL 9-11).

RESPONSE: Deny. Deputy Dziadosz testified that Mr. Norman fell down after several strikes with Sgt. Fiene's Maglite. (Dziadosz Dep. 81.) Moreover, Sgt. Fiene stated that he jumped on Mr. Norman's back and wrestled him to the ground. (Fiene Dep. 47.)

**REPLY:**

**To the extent that it is deemed that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.**

228.    The individual fell face down on the ground in the prone position and placed both of his arms underneath his chest.  (Dziadosz Depo., p. 82 LL 9-12).

RESPONSE: Admit.

229.    Sgt. Fiene went to the ground straddling the individual by sitting on his buttocks in an attempt to hold the individual down.  (Fiene Aff., ¶43).

RESPONSE: Deny. William Durant testified that all three police officers, including Sgt. Fiene, put pressure on Mr. Norman's back, neck, and shoulders. (Durant Dep. 43, 208-09.)

**REPLY:**

**The cited testimony of Durant does not dispute this fact in any manner. Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 229 and, therefore, the factual statement set forth above in paragraph 229 should be deemed admitted.  See _Evans_, 2009 WL 2408381.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See _Anderson_, 477 U.S. at 248.**

230.    Sgt. Fiene again ordered the individual to place his hands behind his back with the individual failing to comply.  (Fiene Aff., ¶44).

RESPONSE: Deny. William Durant testified Mr. Norman was not resisting, struggling, or attempting to stand up while he was on the ground. (Durant Dep. 46.)

**REPLY:**

The first thing that Durant allegedly saw when he got to the location where Norman was being arrested was Norman on the ground and a female officer "straddling… [Norman's] right shoulder with her knees." (Ex. U - Durant Depo., p. 36, LL 5-24)  A male officer was "basically doing the same thing on the other side." (Ex. U - Durant Depo., p. 36, LL 5-24)  Sergeant Fiene was straddling Norman and "sitting on his butt." (Ex. U - Durant Depo., p. 36, LL 5-24)  Durant's testimony demonstrates that Deputy Watson was already present and was allegedly straddling Norman's right shoulder when he first got to the location where Norman was being arrested.  The factual statement set forth in paragraph 230, however, is describing events that occurred before Deputy Watson had arrived at that location.  Consequently, Durant was not even present when the event occurred that is described in paragraph 230 and, thus, Durant obviously would have no personal knowledge regarding events that occurred prior to his arrival at that location.  Moreover, the cited testimony of Durant does not dispute this fact in any manner.  Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 230 and, therefore, the factual statement set forth above in paragraph 230 should be deemed admitted.  See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.

231.    The individual placed both of his arms underneath him and would not release his

arms to be handcuffed. (Fiene Aff., ¶45).

RESPONSE: Deny. William Durant testified Mr. Norman was not resisting, struggling, or attempting to stand up while he was on the ground. (Durant Dep. 46.)

**REPLY:**

**The first thing that Durant allegedly saw when he got to the location where Norman was being arrested was Norman on the ground and a female officer "straddling… [Norman's] right shoulder with her knees." (Ex. U - Durant Depo., p. 36, LL 5-24) A male officer was "basically doing the same thing on the other side." (Ex. U - Durant Depo., p. 36, LL 5-24) Sergeant Fiene was straddling Norman and "sitting on his butt." (Ex. U - Durant Depo., p. 36, LL 5-24) Durant's testimony demonstrates that Deputy Watson was already present and was allegedly straddling Norman's right shoulder when he first got to the location where Norman was being arrested. The factual statement set forth in paragraph 231, however, is describing events that occurred before Deputy Watson had arrived at that location. Consequently, Durant was not even present when the event occurred that is described in paragraph 231 and, thus, Durant obviously would have no personal knowledge regarding events that occurred prior to his arrival at that location. Moreover, the cited testimony of Durant does not dispute this fact in any manner. Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 231 and, therefore, the factual statement set forth above in paragraph 231 should be deemed admitted. See Evans, 2009 WL 2408381.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's**

liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

232. Deputy Dziadosz attempted to remove the individual's left arm from underneath his chest so the individual could be handcuffed. (Dziadosz Aff., ¶40).

RESPONSE: Admit.

233. During this time, Sgt. Fiene attempted to pull the individual's right arm from underneath his chest so he could be handcuffed. (Fiene Aff., ¶46).

RESPONSE: Admit.

234. Sgt. Fiene continued to struggle with the individual for one to two minutes and continued to command him to stop resisting and give up his hands so that he could be handcuffed. (Fiene Depo., p. 51 LL 12-18).

RESPONSE: Deny. William Durant testified Mr. Norman was not resisting, struggling, or attempting to stand up while he was on the ground. (Durant Dep. 46.)

**REPLY:**

**The first thing that Durant allegedly saw when he got to the location where Norman was being arrested was Norman on the ground and a female officer "straddling… [Norman's] right shoulder with her knees." (Ex. U - Durant Depo., p. 36, LL 5-24) A male officer was "basically doing the same thing on the other side." (Ex. U - Durant Depo., p. 36, LL 5-24) Sergeant Fiene was straddling Norman and "sitting on his butt." (Ex. U - Durant Depo., p. 36, LL 5-24) Durant's testimony demonstrates that Deputy Watson was already present and was allegedly straddling Norman's right shoulder when he first got to the location where Norman was being arrested. The factual statement set forth in paragraph 234, however, is describing events that occurred before Deputy Watson had arrived at that**

location.  Consequently, Durant was not even present when the event occurred that is described in paragraph 234 and, thus, Durant obviously would have no personal knowledge regarding events that occurred prior to his arrival at that location.  Moreover, the cited testimony Durant does not dispute this fact in any manner.  Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 234 and, therefore, the factual statement set forth above in paragraph 234 should be deemed admitted.  See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.

235.  The individual continued to refuse to comply with the requests keeping his arms underneath his body and then did a pushup with his arms trying to get up off the ground with Sgt. Fiene and Deputy Dziadosz attempting to push him back to the ground.  (Id., p. 51 LL 18-25, p. 52 LL 1-2).

RESPONSE: Deny. William Durant testified that Mr. Norman "could not move" and that he "personally never saw this man resist anything." (Durant Dep. 64-65.)

REPLY:

The first thing that Durant allegedly saw when he got to the location where Norman was being arrested was Norman on the ground and a female officer "straddling… [Norman's] right shoulder with her knees."  (Ex. U - Durant Depo., p. 36, LL 5-24)  A male officer was "basically doing the same thing on the other side."  (Ex. U - Durant Depo., p. 36,

LL 5-24) Sergeant Fiene was straddling Norman and "sitting on his butt."  (Ex. U - Durant Depo., p. 36, LL 5-24)  Durant's testimony demonstrates that Deputy Watson was already present and was allegedly straddling Norman's right shoulder when he first got to the location where Norman was being arrested.  The factual statement set forth in paragraph 235, however, is describing events that occurred before Deputy Watson had arrived at that location.  Consequently, Durant was not even present when the event occurred that is described in paragraph 235 and, thus, Durant obviously would have no personal knowledge regarding events that occurred prior to his arrival at that location.  Moreover, the cited testimony of Durant does not dispute this fact in any manner.  Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 235 and, therefore, the factual statement set forth above in paragraph 235 should be deemed admitted.  See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment.  See Anderson, 477 U.S. at 248.

236.    Sgt. Fiene was unable to push the individual back to the ground so he struck him in the right elbow with his flashlight.  (Id., p. 52 LL 3-5).

RESPONSE: Admit for purposes of summary judgment only that Sgt. Fiene struck Mr. Norman in the right elbow with his flashlight. Deny that Sgt. Fiene had to push Mr. Norman back to the ground. William Durant testified that Mr. Norman "could not move" and that he "personally never saw this man resist anything." (Durant Dep. 64-65.)

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

Moreover, Sgt. Fiene attempted to "break" Mr. Norman's arm with his Maglite. (Fiene Dep. 52.)

**REPLY:**

**The first thing that Durant allegedly saw when he got to the location where Norman was being arrested was Norman on the ground and a female officer "straddling… [Norman's] right shoulder with her knees." (Ex. U - Durant Depo., p. 36, LL 5-24) A male officer was "basically doing the same thing on the other side." (Ex. U - Durant Depo., p. 36, LL 5-24) Sergeant Fiene was straddling Norman and "sitting on his butt." (Ex. U - Durant Depo., p. 36, LL 5-24) Durant's testimony demonstrates that Deputy Watson was already present and was allegedly straddling Norman's right shoulder when he first got to the location where Norman was being arrested. The factual statement set forth in paragraph 236, however, is describing events that occurred before Deputy Watson had arrived at that location. Consequently, Durant was not even present when the event occurred that is described in paragraph 236 and, thus, Durant obviously would have no personal knowledge regarding events that occurred prior to his arrival at that location. This is confirmed by Durant's testimony that he never saw Sgt. Fiene strike Mr. Norman with any object. (Ex. U - Durant Depo., p. 59, LL 25; p. 60, LL 1-16) Furthermore, Plaintiffs' citation to additional testimony fails to specifically controvert the factual statement contained in paragraph 236. Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 236 and, therefore, the factual statement set forth above in paragraph 236 should be deemed admitted. See Evans, 2009 WL 2408381.**

**To the extent that it is found that Plaintiffs have specifically controverted this**

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

237.    The strike to the individual's right elbow had no effect on the individual with him continuing to push up off the ground with Sgt. Fiene and Deputy Dziadosz continuing to struggle with the individual until they finally forced him face down on the ground.  (Id., p. 53 LL 8-15).

RESPONSE: Deny that Mr. Norman continued to push up off the ground. William Durant testified that Mr. Norman "could not move" and that he "personally never saw this man resist anything." (Durant Dep. 64-65.)

**REPLY:**

**The first thing that Durant allegedly saw when he got to the location where Norman was being arrested was Norman on the ground and a female officer "straddling… [Norman's] right shoulder with her knees." (Ex. U - Durant Depo., p. 36, LL 5-24)  A male officer was "basically doing the same thing on the other side." (Ex. U - Durant Depo., p. 36, LL 5-24)  Sergeant Fiene was straddling Norman and "sitting on his butt." (Ex. U - Durant Depo., p. 36, LL 5-24)  Durant's testimony demonstrates that Deputy Watson was already present and was allegedly straddling Norman's right shoulder when he first got to the location where Norman was being arrested.  The factual statement set forth in paragraph 237, however, is describing events that occurred before Deputy Watson had arrived at that location.  Consequently, Durant was not even present when the event occurred that is described in paragraph 237 and, thus, Durant obviously would have no personal knowledge regarding events that occurred prior to his arrival at that location.**

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 237 and, therefore, the factual statement set forth above in paragraph 237 should be deemed admitted. **See** **Evans**, **2009 WL 2408381.**

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. **See** **Anderson**, **477 U.S. at 248.**

238.    During this time, Sgt. Fiene again activated his taser on a number of occasions attempting to drive-stun the individual in the back to force him by the use of pain from the taser to release his arms from underneath his chest.  (Fiene Aff., ¶47).

RESPONSE: Admit.

239.    Sgt. Fiene recalled that he activated the taser in the drive-stun mode on a number of occasions, but he was unsure how many times he actually drive-stunned the individual with the taser and observed that no taser drive-stun had any effect on the individual.  (Fiene Aff., ¶48).

RESPONSE: Deny. An eyewitness observed that as Sgt. Fiene drive stunned Mr. Norman, he let out squalls of pain. (Durant Dep. 39.) Further, Sgt. Fiene activated his taser 15 times. (Taser Records, Camden County 00084.)

**REPLY:**

**The Taser Records cited by Plaintiffs only confirm the number of times the taser was activated and do not provide any evidence as to the number of times Sergeant Fiene**

may have actually drive stunned Norman with the taser. Moreover, the testimony cited by the Plaintiffs does not dispute the fact that the taser drive-stun had no effect on the individual. For this reason, the testimony cited by Plaintiffs does not specifically controvert the factual statement set forth in paragraph 239 and, therefore, the factual statement set forth in paragraph 239 should be deemed admitted. See <u>Evans</u>, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See <u>Anderson</u>, 477 U.S. at 248.

240.    At one point, Deputy Dziadosz was able to retrieve the individual's left wrist from under his chest with Sgt. Fiene placing a handcuff on the left wrist of the individual. (Fiene Aff., ¶49).

RESPONSE: Admit.

241.    At about that time, Deputy Watson arrived on the scene with her arriving at 4:36:47 a.m. (Fiene Aff., ¶50; Dispatch Log attached as Ex. D).

RESPONSE: Admit.

242.    When Deputy Watson first arrived, she observed that the individual was struggling against the deputies, was not following commands that Sgt. Fiene was giving him, and was attempting to push himself off the ground. (Deposition of Jamee Watson, p. 35 LL 5-12 attached as Ex. N and hereinafter referred to as "Watson Depo.").

RESPONSE: Deny. William Durant testified that Mr. Norman "could not move" and that

he "personally never saw this man resist anything." (Norman Dep. 64-65.)

**REPLY:**

**The first thing that Durant allegedly saw when he got to the location where Norman was being arrested was Norman on the ground and a female officer "straddling… [Norman's] right shoulder with her knees." (Ex. U - Durant Depo., p. 36, LL 5-24) A male officer was "basically doing the same thing on the other side." (Ex. U - Durant Depo., p. 36, LL 5-24) Sergeant Fiene was straddling Norman and "sitting on his butt." (Ex. U - Durant Depo., p. 36, LL 5-24) Durant's testimony demonstrates that Deputy Watson was already present and was allegedly straddling Norman's right shoulder when he first got to the location where Norman was being arrested. The factual statement set forth in paragraph 242, however, is describing events that occurred before Deputy Watson was allegedly straddling Norman's right shoulder with her knees. Consequently, Durant was not even present when the event occurred that is described in paragraph 242 and, thus, Durant obviously would have no personal knowledge regarding events that occurred prior to his arrival at that location. Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 242 and, therefore, the factual statement set forth above in paragraph 242 should be deemed admitted. See Evans, 2009 WL 2408381.**

243.    Deputy Watson believed when she arrived that the individual was an emotionally disturbed person because he was not following commands of the deputies and was not responding the way a normal person would respond. (Watson Depo., p. 36 LL 23-25, p. 37 LL 1-7).

RESPONSE: Admit.

244. Deputy Watson observed that Sgt. Fiene and Deputy Dziadosz were struggling with the individual to gain control of him. (Id., p. 32 LL 5-9). Deputy Watson rushed to the individual and got down on her knees and grabbed the individual's right arm in an attempt to get it out from under his body. (Id., p. 34 LL 5-9).

RESPONSE: Deny. William Durant testified Mr. Norman was not resisting, struggling, or attempting to stand up while he was on the ground. (Durant Dep. 46.)

**REPLY:**

**The first thing that Durant allegedly saw when he got to the location where Norman was being arrested was Norman on the ground and a female officer "straddling… [Norman's] right shoulder with her knees." (Ex. U - Durant Depo., p. 36, LL 5-24) A male officer was "basically doing the same thing on the other side." (Ex. U - Durant Depo., p. 36, LL 5-24) Sergeant Fiene was straddling Norman and "sitting on his butt." (Ex. U - Durant Depo., p. 36, LL 5-24) Durant's testimony demonstrates that Deputy Watson was already present and was allegedly straddling Norman's right shoulder when he first got to the location where Norman was being arrested. The factual statement set forth in paragraph 244, however, is describing events that occurred before Deputy Watson was allegedly straddling Norman's right shoulder with her knees. Consequently, Durant was not even present when the event occurred that is described in paragraph 244 and, thus, Durant obviously would have no personal knowledge regarding events that occurred prior to his arrival at that location. Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 244 and, therefore, the factual statement set forth above in paragraph 244 should be deemed admitted. See Evans, 2009 WL 2408381.**

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

245. During this time, Deputy Watson heard Sgt. Fiene directing the individual to put his hands behind his back. (Id., p. 34 LL 17-20). Deputy Watson observed that the individual was yelling and grunting, but she could not decipher any of his words. (Id., p. 34 LL 23-25, p. 35 LL 1-4).

RESPONSE: Admit.

246. Deputy Watson assumed that the individual was either intoxicated or under the influence of narcotics. (Watson Aff., ¶29).

RESPONSE: Admit.

247. After Deputy Watson put her knees on the ground, she gave the individual commands to put his hands behind his back and stop resisting. (Watson Depo., p. 37 LL 17-20).

RESPONSE: Admit.

248. Deputy Watson was able to pull the individual's right wrist from under his body. (Id., p. 41 LL 18-21).

RESPONSE: Admit.

249. After removing the individual's wrist from underneath his body, Deputy Watson placed her right knee in between the individual's shoulder blades with her left knee on the ground so she would have additional leverage to pull his arm from underneath his body and put it behind his back. (Watson Aff., ¶30).

> RESPONSE: Admit that Deputy Watson placed her right knee in between Mr. Norman's shoulder blades with her left knee on the ground. Deny that she performed it to gain additional leverage to pull his arm from underneath his body. Sheriff Franklin admitted that the deputies were trained to perform this tactic until a suspect "stops struggling and calms down." (Franklin Dep. 76.)

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

**REPLY:**

The testimony by Sheriff Franklin that is cited by Plaintiffs fails to specifically controvert Deputy Watson's testimony as to why she engaged in the conduct set forth in paragraph 249. Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 249 and, therefore, the factual statement set forth above in paragraph 249 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

250. Within 30-45 seconds, Deputy Watson was able to pull the individual's right arm far enough behind his back for Sgt. Fiene to handcuff the individual. (Watson Aff., ¶31).

RESPONSE: Deny. William Durant testified that Deputy Dziadosz and Deputy Watson held Mr. Norman down for one to two minutes until the officers handcuffed him. (Durant Dep. 55.)

**REPLY:**

The testimony by Durant that is cited by Plaintiffs that contains his testimony as to the total amount of time that he claims Norman was restrained fails to specifically controvert Deputy Watson's testimony as to how long it took her to pull Norman's right hand behind his back for Sgt. Fiene to handcuff Norman. Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set

forth above in paragraph 250 and, therefore, the factual statement set forth above in paragraph 250 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is deemed that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

251.    Sgt. Fiene was forced to place two sets of handcuffs on the individual because he and the other deputies could not move his hands close enough together to use one pair of handcuffs. (Fiene Depo., p. 53 LL 20-25, p. 54 LL 1-7). Sgt. Fiene noted that the individual was stronger than he and the other two deputies causing him to be unable to move his hands close enough together to use one pair of handcuffs. (Fiene Aff., ¶51).

RESPONSE: Admit that the officers used two pairs of handcuffs to handcuff Mr. Norman. Deny that Mr. Norman was stronger than the officers. This statement contains conclusions, not factual assertions, and is self-serving. Moreover, Deputy Dziadosz is 6'0" tall and weighs 165 lbs. (Dziadosz Dep. 6), Sgt. Fiene is 6'3" and weighs 230 lbs. (Fiene Dep. 6), and Deputy Watson weighs between 220 to 230 lbs. (Rugen Dep. 6), while Mr. Norman was only 5'4" tall and weighed 170 lbs. (Stacy Dep. 35-36).

REPLY:

Sergeant Fiene is permitted to provide lay opinion testimony as to his perception about Norman and Norman's strength based upon his experience in arresting and handcuffing suspects and his general life experiences. See Fed.R.Evid. 701; Smith, 591 F.3d at 982. Additionally, the testimony cited by Plaintiffs in support of their denial does

not specifically controvert the statement set forth in paragraph 251 and, therefore, the statement set forth in paragraph 251 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

252.    After being handcuffed, the individual continued to rock his body back and forth and attempted to stand so Deputy Watson kept her knee in the middle of the individual's shoulder blades to control the individual. (Watson Aff., ¶32).

RESPONSE: Admit that Deputy Watson kept her knee in the middle of Mr. Norman's shoulder blades. Deny that Mr. Norman continued to rock his body back and forth. Deny. William Durant testified Mr. Norman was not resisting, struggling, or attempting to stand up while he was on the ground. (Durant Dep. 46.)

**REPLY:**

**The testimony of Durant cited by Plaintiffs does not dispute this fact in any manner, and it should be deemed admitted.**

253.    Deputy Watson kept her knee in the middle of the individual's shoulder blades to prevent the individual from standing and attempting to flee and to prevent the individual from potentially harming her, Sgt. Fiene, Deputy Dziadosz, or himself. (Watson Aff., ¶33).

RESPONSE: Admit that Deputy Watson kept her right knee in between Mr. Norman's shoulder blades. Deny that she performed it to prevent the individual from standing and

attempting to flee or to prevent the individual from harming the officers. Sheriff Franklin admitted that the deputies were trained to perform this tactic until a suspect "stops struggling and calms down." (Franklin Dep. 76.) Mr. Norman posed no risk of flight because he was already handcuffed. (D.'s Facts ¶ 250.) And Mr. Norman did not pose any danger to the officers because he was unarmed (Dziadosz Dep. 58) and was in handcuffs. (D.'s Facts ¶ 250). Moreover, Mr. Norman never attempted to strike, hit, kick, or make contact with anyone, including the deputies (See, e.g., Dziadosz Dep. 107) nor did he resist, struggle, or even attempt to stand up while he was on the ground (Durant Dep. 46).

**REPLY:**

**Deputy Watson is permitted to provide lay opinion testimony as to personal knowledge of why she engaged in certain acts as a law enforcement officer based upon her training and experience as a licensed law enforcement officer since 2009 and her perception based upon her observations. (Defendants' Statement of Facts ¶¶77-97) <u>See</u> <u>Smith</u>, 591 F.3d at 982; Fed.R.Evid. 701. For this reason, this fact should be deemed admitted.**

254. After two to three minutes, the individual relaxed and became calm and Deputy Watson immediately removed her knee. (Watson Aff., ¶34.)

RESPONSE: Deny. William Durant testified that Mr. Norman "went limp" and began "gurgling." (Durant Dep. 78.)

**REPLY:**

**Plaintiffs' response fails to specifically controvert the factual statement contained in paragraph 254. Durant's testimony that Norman "went limp" is consistent with Deputy Watson's testimony that Norman "relaxed and became calm." Furthermore, Durant's**

testimony that Norman was "gurgling" also does not specifically controvert the factual statement in paragraph 254. Accordingly, Plaintiffs' denial fails to set forth any admissible evidence specifically controverting the factual statement set forth above in paragraph 254 and, therefore, the factual statement set forth above in paragraph 254 should be deemed admitted. See Evans, 2009 WL 2408381.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

255. Deputy Dziadosz rolled the individual on his side (Dziadosz Depo., p. 95, LL 1-12).

RESPONSE: Deny. William Durant testified that Deputy Dziadosz and Deputy Watson moved Mr. Norman to the shorter grass and "laid him down, still face down." (Durant Dep. 106-07.) He further testified that Mr. Norman "was never turned on his side" before officers moved Mr. Norman to shorter grass. (Id. at 110.)

REPLY:

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

256. Sgt. Fiene radioed dispatch to confirm that the individual was in custody at

4:40:09 a.m.  (Fiene Aff., ¶52; Dispatch Log attached as Ex. D).

RESPONSE: Admit.

257.    When the individual was secured in handcuffs, Sgt. Fiene raised up off of him and stood up.  (Fiene Depo., p. 62 LL 11-17).

RESPONSE: Admit.

258.    Sgt. Fiene then directed his attention to a second male individual and a female who had come upon the scene and started arguing.  (Fiene Aff., ¶53).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

259.    Deputy Dziadosz and Deputy Watson remained with the male individual who had been handcuffed to observe him.  (Dziadosz Aff., ¶41; Watson Aff., ¶35).

RESPONSE: Admit the officers remained near Mr. Norman. Deny that the officers adequately observed him. (See Durant Dep. 100-01.)

260.    Deputy Dziadosz and Deputy Watson observed that the individual went to sleep and started making sounds like he was snoring.  (Dziadosz Aff., ¶42; Watson Aff., ¶36).

RESPONSE: Deny. William Durant testified that the sound "wasn't a snore. It was a gurgle noise." (Durant Dep. 80.)

**REPLY:**

**Plaintiffs' response fails to specifically controvert the factual statement contained in paragraph 260 and, therefore, the factual statement set forth above in paragraph 260 should be deemed admitted.  See Evans, 2009 WL 2408381.  Plaintiffs' response cites to testimony from Durant that contains his description of the sound that was emanating from Norman as a gurgling sound, and that Durant did not believe that the sound was a snoring**

sound. The witnesses differing subjective descriptions as to the nature of sound emanating from Durant does not controvert the objective fact that a sound was emanating from Norman. The small variations in the terms used by the witnesses to describe that sound is insufficient to demonstrate any substantive differences in their testimony and, therefore, is insufficient to demonstrate the existence of a genuine issue of material fact. See Matsushita Elec. Indus. Co., Ltd., 475 U.S. at 586.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

261. During this time, Deputy Dziadosz and Deputy Watson observed that the individual was breathing and did not appear to be having problems breathing. (Dziadosz Aff., ¶43; Watson Aff., ¶37).

RESPONSE: Deny. This statement consists of conclusions, not factual assertions. Moreover, William Durant testified Mr. Norman "was having problems breathing, was going to die because he couldn't fuckin' breathe." (Durant Dep. 105-06.)

REPLY:

The testimony of Durant cited by the Plaintiffs does not dispute this fact in any manner, and it should be deemed admitted because it is based on the Defendants' personal observations. Deputy Dziadosz and Deputy Watson are permitted to provide lay opinion testimony based upon their perceptions from their personal knowledge and observation. See Smith, 591 F.3d at 982; Fed.R.Evid. 701.

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

262.    Sgt. Fiene returned to the location and called for an ambulance to respond to the scene at 4:43:17 a.m.  (Fiene Aff., ¶54; Dispatch Log attached as Ex. D).

RESPONSE: Admit.

263.    Sgt. Fiene decided to call for an ambulance as a safety precaution to make sure the individual was not hurt during the struggle and because he had been tased, hit in the elbow, and hit in the calf.  (Fiene Depo., p. 73 LL 12-18).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

264.    Sgt. Fiene decided to move the individual from the tall grass in the back yard of the residence to a mowed area on the side of the residence.  (Fiene Aff., ¶55).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

265.    Sgt. Fiene went to Deputy Dziadosz's patrol car and drove it to the side of a residence close to the location where the individual had been handcuffed.  (Fiene Aff., ¶56).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

266.    Sgt. Fiene then walked to the back of the residence and told Deputy Dziadosz that they should move the individual from the tall grass behind the residence to an area where the

grass had been mowed beside the residence close to the patrol car. (Fiene Aff., ¶57).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

267. Sgt. Fiene and Deputy Dziadosz carried the individual under each shoulder from the back of the residence to the shorter mowed grass area. (Fiene Aff., ¶58).

RESPONSE: Admit the officers moved Mr. Norman; however, William Durant testified that the officers "dragged" him. (Durant Dep. 164.)

**REPLY:**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

268. After he was moved, Deputy Dziadosz placed him on his side. (Dziadosz Depo., p. 104 LL 20-25, p. 105 LL 21-24).

RESPONSE: Deny. William Durant testified that Deputy Dziadosz and Deputy Watson moved Mr. Norman to the shorter grass and "laid him down, still face down." (Durant Dep. 106-07.)

**REPLY:**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary**

judgment.  See <u>Anderson</u>, 477 U.S. at 248.

269.    Deputy Dziadosz and Deputy Watson continued to observe the individual after he was moved to the short grass area, and that the individual did not appear to have problems breathing.  (Dziadosz Aff., ¶44; Watson Aff., ¶38).

RESPONSE: Deny. This statement consists of conclusions, not factual assertions. And a "belief" or state of mind is not a factual assertion and has no factual basis. Moreover, William Durant testified that while the officers moved Mr. Norman, it sounded "like his lungs were full of something. . . just nasty bubbly sound." (Durant Dep. 109-10.) After being moved to the short grass, Durant observed Mr. Norman take his last two breaths (Id. at 115-16).

**REPLY:**

**Deputy Dziadosz is permitted to provide lay opinion testimony as to personal knowledge of why he engaged in certain acts as a law enforcement officer based upon his training and experience as a licensed law enforcement officer since 2007 and lay opinion testimony based on perceptions from personal observations.  (Defendants' Statement of Facts ¶¶54-75).  Deputy Watson is permitted to provide lay opinion testimony as to personal knowledge of why she engaged in certain acts as a law enforcement officer based upon her training and experience as a licensed law enforcement officer since 2009 and lay opinion testimony based on perceptions from personal observations. (Defendants' Statement of Facts ¶¶77-97).  See <u>Smith</u>, 591 F.3d at 982; Fed.R.Evid. 701.  For this reason, this fact should be deemed admitted.  Moreover, the testimony of Durant cited by the Plaintiffs does not dispute this fact in any manner, so it should be deemed admitted because it is based on personal observations by the Defendants.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

270. Deputy Dziadosz and Deputy Watson observed that the individual continued to breathe after he was moved to the short grass area and that the individual did not appear to be having problems breathing. (Dziadosz Aff., ¶45; Watson Aff., ¶39).

RESPONSE: Deny. Deputy Watson testified that after moving Mr. Norman to the short grass area, he continued to make "snoring" sounds, which William Durant described as "a gurgle noise" indicating he was having problems breathing. (Rugen Dep. 60; Durant Dep. 80.) Moreover, he testified that while the officers moved Mr. Norman, it sounded "like his lungs were full of something. . . just nasty bubbly sound." (Id. 109-10.) After being moved to the short grass, Durant observed Mr. Norman take his last two breaths (Id. at 115-16).

**REPLY:**

**Deputy Dziadosz is permitted to provide lay opinion testimony as to personal knowledge of why he engaged in certain acts as a law enforcement officer based upon his training and experience as a licensed law enforcement officer since 2007 and lay opinion testimony based on perceptions from personal observations. (Defendants' Statement of Facts ¶¶54-75). Deputy Watson is permitted to provide lay opinion testimony as to personal knowledge of why she engaged in certain acts as a law enforcement officer based upon her training and experience as a licensed law enforcement officer since 2009 and lay**

opinion testimony based on perceptions from personal observations. (Defendants' Statement of Facts ¶¶77-97). See <u>Smith</u>, 591 F.3d at 982; Fed.R.Evid. 701. For this reason, this fact should be deemed admitted. Moreover, the testimony of Durant cited by the Plaintiffs does not dispute this fact in any manner and it should be deemed admitted because it is based on the personal observations of the Defendants.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

271. Deputy Larry Rutherford arrived on the scene at 4:47:14 a.m. after the individual had been moved to the short grass area. (Rutherford Aff., ¶21; Dispatch Log attached as Ex. D).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

272. Deputy Rutherford was not involved in the arrest of the individual and did not use any force on the individual during his arrest or after his arrest. (Rutherford Aff., ¶22).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

273. Thereafter, Deputy Dziadosz and Deputy Rutherford observed that the individual stopped breathing and no pulse could be found for him. (Rutherford Aff., ¶23; Dziadosz Aff., ¶46).

RESPONSE: Deny. Mr. Norman had already stopped breathing before Deputy Rutherford arrived. (Durant Dep. 115-16.)

**REPLY:**

Deputy Dziadosz is permitted to provide lay opinion testimony as to personal knowledge of why he engaged in certain acts as a law enforcement officer based upon his training and experience as a licensed law enforcement officer since 2007 and lay opinion testimony based on perceptions from personal observations. (Defendants' Statement of Facts ¶¶54-75). Deputy Rutherford is permitted to provide lay opinion testimony as to personal knowledge of why he engaged in certain acts as a law enforcement officer based upon his training and experience as a licensed law enforcement officer since 2006 and lay opinion testimony based on perceptions from personal observations. (Defendants' Statement of Facts ¶¶101-120). See Smith, 591 F.3d at 982; Fed.R.Evid. 701. For this reason, this fact should be deemed admitted. Moreover, the testimony of Durant cited by the Plaintiffs does not dispute this fact in any manner and it should be deemed admitted because it is based on the personal observations of the Defendants.

To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.

274. Deputy Rutherford and Deputy Dziadosz began CPR on the individual when he stopped breathing and lost a pulse. (Rutherford Aff., ¶24; Dziadosz Aff., ¶47).

RESPONSE: Deny. Mr. Norman had already stopped breathing before Deputy Rutherford arrived. (Durant Dep. 115-16.)

**REPLY:**

**Deputy Dziadosz is permitted to provide lay opinion testimony as to personal knowledge of why he engaged in certain acts as a law enforcement officer based upon his training and experience as a licensed law enforcement officer since 2007 and lay opinion testimony based on perceptions from personal observations. (Defendants' Statement of Facts ¶¶54-75). Deputy Rutherford is permitted to provide lay opinion testimony as to personal knowledge of why he engaged in certain acts as a law enforcement officer based upon his training and experience as a licensed law enforcement officer since 2006 and lay opinion testimony based on perceptions from personal observations. (Defendants' Statement of Facts ¶¶101-120). See Smith, 591 F.3d at 982; Fed.R.Evid. 701. For this reason, this fact should be deemed admitted. Moreover, the testimony of Durant cited by the Plaintiffs does not dispute this fact in any manner and it should be deemed admitted because it is based on the personal observations of the Defendants.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

275.    Sgt. Fiene also placed a call to dispatch requesting that dispatch have the ambulance expedite to the location at 4:56:38 a.m. (Fiene Aff., ¶59; Dispatch Log attached as Ex. D).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

276.    The paramedics with the ambulance district arrived at 5:01 a.m. (Deposition of

Matthew Southard, p. 38, LL 10-13 attached as Ex. O and hereinafter referred to as "Southard Depo.").

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

277.    The individual could not be revived and was pronounced dead at 5:31 a.m. (Watson Aff., ¶40).

RESPONSE: Admit.

278.    The individual was identified as Glenn David Norman.  (Dziadosz Aff., ¶48).

RESPONSE: Admit.

279.    The death of Glenn David Norman was investigated by the Missouri Highway Patrol and the Camden County Prosecuting Attorney.  (Franklin Aff., ¶39).  Sgt. Fiene, Deputy Dziadosz, Deputy Watson, and Deputy Rutherford were all interviewed by the Missouri Highway Patrol in the investigation.  (Fiene Aff., ¶60; Dziadosz Aff., ¶49; Watson Aff., ¶41; Rutherford Aff., ¶25).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

280.    No criminal charges were filed against Sgt. Fiene, Deputy Dziadosz, or Deputy Watson concerning the death of Glenn David Norman.  (Franklin Aff., ¶40).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

281.    Toxicology tests were performed upon Glenn David Norman which determined that he had a high level of methamphetamine and some other drugs in his system.  (Deposition of Christopher Long, p. 18 LL 15-25, p. 19 LL 1-25, p. 20 LL 1-25, p. 21 LL1-9, p. 34 LL 9-22,

attached as Ex. P and hereinafter referred to as "Long Depo.").

> RESPONSE: Admit that toxicology reports were performed upon Mr. Norman which found methamphetamine and hydrocodone in his system. (Autopsy Report.) Deny to the extent that he had a "high level" of methamphetamine and "other drugs" in his system. These statements are vague, ambiguous, and consist of conclusions, not factual assertions.

**REPLY:**

**Plaintiffs admit that Glenn David Norman had methamphetamines and hydrocodone in his system. The Plaintiffs have cited no facts to dispute the testimony of Dr. Long that Glenn David Norman had a "high" level of methamphetamines in his system, so this fact should be deemed admitted.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

282.    Sgt. Fiene, Deputy Dziadosz, and Deputy Watson prepared reports concerning their interaction with Glenn David Norman and Use of Force Reports concerning the arrest of and their interaction with Glenn David Norman as required by the policies of the Camden County Sheriff's Department. (Fiene Aff., ¶61; Dziadosz Aff., ¶50; Watson Aff., ¶42).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

283.    Deputy Rutherford prepared a report concerning his interaction with Glenn David

Norman.  (Rutherford Aff., ¶26).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

284.    Sheriff Franklin reviewed the reports of Sgt. Fiene, Deputy Dziadosz, Deputy Watson, and Deputy Rutherford and the investigation of the Missouri State Highway Patrol. (Franklin Aff., ¶41).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

285.    Sheriff Franklin also interviewed all of the deputies about their interaction with Glenn David Norman.  (Id., ¶42).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

286.    Sheriff Franklin determined that Sgt. Fiene, Deputy Dziadosz, Deputy Watson, and Deputy Rutherford did not violate any policies of the Camden County Sheriff's Office during their interaction with Glenn David Norman.  (Franklin Depo., p. 18 LL 13-20).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

287.    Sheriff Franklin imposed no discipline upon Sgt. Fiene, Deputy Dziadosz, Deputy Watson, or Deputy Rutherford for any of their actions relating to Glenn David Norman. (Franklin Aff., ¶43).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

288.    The Plaintiffs retained Ronald L. O'Halloran, M.D. to testify as an expert witness

in this case. (Plaintiffs' Disclosure of Expert Witnesses attached as Ex. Q).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

289.    Ronald L. O'Halloran, M.D. testified in his deposition that the use of the taser did not cause Mr. Norman's death. (Deposition of Ronald O'Halloran, p. 141 LL 15-17, attached as Ex. R).

RESPONSE: Deny. This assertion misstates the cited material. Dr. O'Halloran testified that the taser "probably did not cause death." (O'Halloran Dep. 141.)

**REPLY:**

**This fact should be deemed admitted based on Dr. O'Halloran's testimony cited in his deposition.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

290.    Camden County purchased a Public Entity Liability Insurance Policy from Travelers Insurance Company with an effective date of January 1, 2011 through January 1, 2012. (Franken Aff. ¶3 and certified copy of the policy of insurance issued to Camden County by Travelers attached as Ex. S).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

291.    The Travelers insurance policy for Camden County contains an endorsement

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

ILFO750209 entitled "Preservation of Governmental Immunity - Missouri" confirming that each liability insuring agreement in the policy will apply to the tort liability of any insured only to the extent that such tort liability is not subject to any defense of sovereign or governmental immunity under Missouri law and further provides that the purchase of the policy is not a waiver, under Mo.Rev.Stat. §537.610 or Mo.Rev.Stat. §71.185 or any amendments to those sections, of any sovereign or governmental immunity that would be available to any insured had you not purchased this policy. (Id. Franken Aff. ¶3). Camden County, Defendant Franklin, Defendant Fiene, Defendant Dziadosz, Defendant Watson, and Defendant Rutherford are defined as insureds by the insurance policy. (Ex. S).

> RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

292. The Plaintiffs in response to Defendant Dwight Franklin's First Set of Interrogatories identified the customs and policies of Camden County alleged to have been violated under 42 U.S.C. §1983 in Count II of the First Amended Complaint as follows:

> a. The failure of Camden County to have any policies regarding arrest procedures, treatment of subjects after arrest, or handling emotionally disturbed persons;
>
> b. The failure of Camden County to have first-aid policies;
>
> c. The failure of Camden County to have policies dealing with monitoring subjects in custody;
>
> d. The failure of Camden County to have policies to prevent in-custody deaths and policies relating to asphyxia;
>
> e. The violation of Camden County's use of force policy by Defendants Fiene, Dziadosz, Watson, and Rutherford;
>
> f. The violation of Camden County's taser policy by Defendant Fiene;
>
> g. The failure to train Defendant Fiene to carry a taser;

h.    The failure to train Defendants, Fiene, Dziadosz, Watson, and Rutherford to deal with emotionally disturbed persons, to appropriately use force, in arrest procedures, treatment of subjects after arrest, monitoring subjects after use of force, monitoring subjects in custody, or reducing the risk of in-custody deaths; and

i.    Inappropriately training Defendants Fiene, Dziadosz, Watson, and Rutherford to put a knee on handcuffed subjects until they stopped struggling.

(Plaintiffs' Answers to Defendant Dwight Franklin's First Set of Interrogatories, Nos. 5, 13, 19, 20, 21, and 22 attached as Ex. T).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

293.    Camden County had no written policy in the Camden County Sheriff's Manual regarding arrest procedures, treatment of subjects after arrest, handling emotionally disturbed persons, first-aid, monitoring subjects in custody, preventing in-custody deaths, and asphyxia prior to October 4, 2011.  (Franklin Aff., ¶44).

RESPONSE:  Admit.

294.    Sheriff Franklin did not adopt written policies regarding arrest procedures, treatment of subjects after arrest, handling emotionally disturbed persons, first-aid, monitoring subjects in custody, preventing in-custody deaths, and asphyxia because no problems or incidents had occurred involving deputy sheriffs in these areas that created a need for these specific policies prior to October 4, 2011. (Id., ¶45).

RESPONSE:  Admit that Sheriff Franklin did not adopt written policies regarding arrest procedures, treatment of subjects after arrest, handling emotionally disturbed persons, first-aid, monitoring subjects in custody, preventing in-custody deaths, and asphyxia. Deny that he did not adopt these policies "because no problems or incidents had occurred involving deputy sheriffs in these areas that created a need for these specific policies

01549103.DOCX/9652-090 - 2/14/2014 01:43 PM

prior to October 4, 2011." This statement is a conclusion, not a factual assertion. Moreover, the dangers of failing to implement policies and to train regarding these issues have been well known for decades. (Franklin Dep. Ex. 2, p. 59; Franklin Dep. Ex. 4; Franklin Dep. 72; Peters Dep. 46-48, 82.)

**REPLY:**

**Sheriff Franklin is permitted to provide lay opinion testimony as to why he did not adopt the policies listed above based upon his training and experience as a licensed law enforcement officer and his perception of the need for policies. See Smith, 591 F.3d at 982; Fed.R.Evid. 701. Furthermore, Plaintiffs' denial fails to set forth any facts specifically controverting the statement set forth above in paragraph 294 and, therefore, the statement set forth above in paragraph 294 should be deemed admitted. See Evans, 2009 WL 2408381. Moreover, Plaintiffs' argument that "the dangers of failing to implement policies and to train regarding these issues have been well known for decades" should be disregarded because that statement contains inadmissible legal conclusions, opinions, speculation, and argument and not statements of facts and, therefore, is insufficient to specifically controvert the factual statement in paragraph 294.**

**To the extent that it is found that Plaintiffs have specifically controverted this factual statement, Defendants state that any dispute as to this factual statement will not affect the outcome of the sole remaining issue in this lawsuit regarding Camden County's liability under § 1983 and, therefore, any such dispute will not preclude summary judgment. See Anderson, 477 U.S. at 248.**

295. Camden County had no complaints or claims for injuries relating to arrest procedures, arrests without probable cause, treatment of subjects after arrest, arresting

emotionally disturbed persons, rendering first-aid to individuals, monitoring subjects in custody, in-custody deaths, the use of a taser, the use of handcuffs in making an arrest, the placement of a knee in the back of an individual handcuffed prone on the ground to control the individual, or asphyxia causing a death prior to October 4, 2011. (Franklin Aff., ¶46).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

296. Camden County had one complaint and a claim for injury before October 4, 2011 arising out of an excessive force complaint made by an individual who was arrested in the lobby of the Camden County Sheriff's Department by a Camden County deputy sheriff not involved in the arrest of Glenn David Norman. (Franklin Aff., ¶47). The excessive force complaint arose out of the deputy sheriff using physical force to arrest the individual. (Id., ¶47).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

297. Before the death of Glenn David Norman on October 4, 2011, no individual had died during an arrest by a Camden County deputy or shortly after the arrest of the individual. (Franklin Aff., ¶48).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

298. Glenn David Norman was the first individual who died shortly after an arrest by a Camden County deputy and while in custody of a Camden County deputy. (Franklin Aff., ¶49).

RESPONSE: Admit for purposes of summary judgment only; however, this fact has no relevance to the issues pertaining to Defendants' Motion for Summary Judgment.

Respectfully submitted,

PAULE, CAMAZINE & BLUMENTHAL, P.C.
*A Professional Corporation*

By:/s/ D. Keith Henson
     D. Keith Henson, #31988MO
     165 North Meramec Ave., Suite 110
     St. Louis (Clayton), MO  63105-3772
     Telephone:  (314) 727-2266
     Facsimile:  (314) 727-2101
     khenson@pcblawfirm.com
     Attorney for Defendants Camden County,
     Brian D. Fiene, Dwight D. Franklin, Richard B.
     Dziadosz, Larry L. Rutherford, and Jamee L.
     Watson

## **CERTIFICATE OF SERVICE**

The undersigned hereby states a true and correct copy of the foregoing was filed with the Clerk of the Court to be served by the operation of the Court's electronic filing system and sent via U. S. Mail this 14th day of February, 2014 to:

John G. Simon
Kevin M. Carnie, Jr.
The Simon Law Firm, P.C.
800 Market Street, Suite 1700
St. Louis, MO  63101
Attorneys for Plaintiffs

/s/ D. Keith Henson